N. McAlpine *et al.* v. The Chicago Great Western Railway Company *et al.*

No. 13,347. (75 Pac. 73.)

SYLLABUS BY THE COURT.

1. TITLE AND OWNERSHIP—*Dedication to Public Construed.* A strip of land lying along the margin of a navigable stream was included in the plat of a city and dedicated to the public by the use of the word "levee" written thereon. Several streets opened upon this tract and many lots had no other means of ingress and egress except over and along it. *Held*, that its dedication included its use as a street as well as a landing-place for boats.

2. ———— *Abandonment Insufficient to Cause Reverter.* Such strip of land is not abandoned by the public so as to cause a reverter to the original dedicators or their representatives because railroads have been permitted to lay their tracks and build depots upon it; nor because its use has been permitted for other unauthorized purposes; nor because river commerce has ceased

and boats do not land upon it; nor because approach to the river margin has become difficult.

3. ———— *When Misuse or Non-use Causes Reverter.* Land dedicated to a public use does not revert to the dedicators because of misuse or non-use, unless its use for the dedicated purpose has become impossible, or so highly improbable as to be practically impossible.

Error from Wyandotte court of common pleas; WILLIAM G. HOLT, judge. Opinion filed January 9, 1904. Affirmed.

*Sutton & Sutton,* for plaintiffs in error.

*Miller, Buchan & Morris, Arthur F. Smith, M. J. Reitz, J. W. Dana, Frank Hagerman, N. H. Loomis, R. W. Blair,* and *H. A. Scandrett,* for defendants in error.

The opinion of the court was delivered by

CUNNINGHAM, J. : This action was one in ejectment for the recovery of a three-fourths interest in a tract of land lying between the platted portion of what is now Kansas City, Kan., on the west, and the Missouri river on the east. The plaintiffs are the heirs of the proprietors of the original plat of Wyandotte, now Kansas City, Kan. This tract in dispute is of irregular form, and, as originally delimited upon the plat, was from 700 to 900 feet wide and perhaps a mile long. Upon the plat it was designated and dedicated as "levee." By reliction and alluvion accretions have been added to the river margin, until now the tract is more than twice the size in width that it was at the time of the dedication.

The defendants are the city of Kansas City; several railroad companies that have received permission from the city to build upon this tract of land their tracks, depots, etc., and are now using the same for such purposes; some private parties who have erected, and

are now maintaining, manufacturing plants of various kinds; and numerous persons who have squatted and built upon the same more or less temporary habitations, and who appear to be residing there now without permission from any one and as trespassers.

The evidence for the plaintiffs in brief showed that the Wyandotte City Town Company was a partnership; that the plat of the city was filed for record in 1859; that there were indicated thereon by name various streets and alleys as dedicated to public use, besides the tract in controversy, which was named "levee"; that several of these streets running at right angles with the river opened at their eastern ends upon this levee; that quite a large number of lots have no approach to them save that afforded by this levee tract; that at the time of this platting the Missouri river was navigated quite extensively by both freight and passenger boats, and continued so to be navigated up to the year 1866, during which time the current of the river swept well up to the eastern line of the levee and afforded an ample natural landing-place for such boats and the commerce brought by them; that after that time navigation fell off by reason of the fact that railroads were built to and from the town, affording easier and swifter communication, and also that the river became less navigable and the landing less feasible by reason of the fact that the current was diverted to the eastern or Missouri shore, the western shore receiving the accretions above noted, and leaving a wide, marshy and comparatively untraversable alluvion between the river and the "levee" as originally platted. It appeared, however, that occasionally pleasure and other craft had landed there at differing stages of water, up to five or six years ago, and that, with some improve-

14—68 KAN.

ments in the way of wharfs and roadways, easy and adequate communication could now be had to the point where navigable water might be reached. At the conclusion of plaintiffs' evidence the court sustained a demurrer thereto, and they are now here asking a reversal of this action.

Their claim is stated most fairly and frankly in their brief, and perhaps no better basis of the discussion here involved can be given than a repetition of their statement. It is :

"This suit proceeds upon the theory that this tract of land was dedicated to the public for a 'levee'; that a levee is a landing-place for boats and for commerce carried on by river ; that this levee was never improved for such purpose by the city or other person or corporation ; that no boats have landed at it for twelve years, and in all human probability will never again use it for a landing ; that it has been permanently abandoned by the city authorities and the public as a 'levee' because (1) the decreased flow of water in the Missouri river makes the navigation of that river impossible ; (2) the permanent change in the channel of the Missouri river from the Kansas to the Missouri bank would make impossible an approach by steamboats to the 'levee,' if any should, by chance, appear upon the Missouri river ; and (3) the complete substitution of railroad carriage of freight and passengers for river transportation."

Upon this premise the plaintiffs deduce the conclusion that abandonment of the use for which this tract of land was dedicated by the original proprietors was shown, and that therefore the title thereto, and with it the right of possession, had reverted to the plaintiffs, as the representatives of such proprietors.

We are, therefore, called upon to examine the soundness of their premise and the correctness of the conclusions deduced. What, then, we first inquire, was

the purpose, as indicated by the word "levee," for which this tract was dedicated? Are we confined to the rather narrow definition which the plaintiffs would have us give to this word, and hold that it simply means a landing-place for boats and commerce carried on by river? Necessarily must be added to this the right to pass over, across and along this tract for the hauling of such goods and passengers as should be there delivered by reason of such commerce. This implies its use as a highway or street, at least to some extent. Would that use be limited to vehicles used for the loading and unloading river traffic, or does it not as well include the right of the general public to use the same as a street for all purposes? It is true, perhaps, that in the popular sense the more restricted meaning obtains, probably because of the fact that such tracts are most largely used in connection with water commerce, rather than because of an analytical examination of the question. It is equally true that it would greatly surprise the general public of cities where boats tie up at well-improved levees to be told that no one other than those who come and go with goods in promoting "commerce carried on by river," are permitted to traverse the same. It is clear that we may not here give to this word the restricted meaning which plaintiffs' definitition contemplates, for, besides the suggestions already made, such a restriction would make each of the streets whose eastern terminus is upon this tract a mere *cul de sac*. Nor would the proprietors of lots abutting the levee have any means of ingress or egress thereto. Primarily, the word "levee" has no such restricted meaning. The lexicographers tell us that it is derived from the same root as the word "lever," and means a rise of ground; specifically, "an embankment to prevent inundation,

or the steep bank of a river," and, used as a transitive verb, it is "to keep within a channel by means of levees." The law dictionaries but reecho this definition and say : "Levees are embankments to prevent the overflow of rivers." (*City of St. Paul v. Chicago & St. P. Ry. Co.*, 63 Minn. 330, 351, 63 N. W. 267, 65 N. W. 649, 68 N. W. 458, 34 L. R. A. 184 ; *Barney v. Keokuk*, 94 U. S. 324, 24 L. Ed. 224 ; *Coffin v. City of Portland*, 27 Fed. [C. C.] 412 ; *The City of New Orleans v. Morris*, 3 Woods [C. C.] 115, Fed. Cas. No. 10,183 ; 2 Dill. Mun. Corp., 4th ed., § 649 ; *City of Napa v. Howland*, 87 Cal. 84, 88, 25 Pac. 247.)

It may well be argued, in the light of recent disastrous experience, that portions of the land in dispute may be needed and used in pursuance of the primary meaning of the term, and that the city, to guard itself from floods, will need to raise embankments thereon. We, therefore, certainly question the soundness of the plaintiffs' major premise : that a levee is only a landing-place for boats. While a levee is a place for the landing of boats and commerce, it is much more than that, and were we to grant the abandonment of the disputed tract for that purpose we would not thereby grant that it was abandoned for all other purposes so as to revert.

Giving to the word "levee" the narrow construction contended for by plaintiffs, we proceed to inquire if the conclusion that there has been an abandonment and consequent reverter is warranted by the facts. In their brief the rule is stated, and we think correctly, as follows :

"Land dedicated to a particular public purpose will revert to the dedicator when there has been a full and lawful abandonment of the use for which the dedication has been made, or when the dedication has spent its force by the use becoming impossible."

That is, abandonment to cause a reverter is something more than a mere cessation of use. The fact that the use has become inconvenient or undesirable to the extent that it has ceased entirely will not constitute an abandonment on the part of the public so as to cause a reverter, and this even though such non-user has extended through a long series of years.

In *Wilgus v. Comm'rs of Miami Co.*, 54 Kan. 605, 38 Pac. 787, a plat of land dedicated as "Seminary square" was held not to have been abandoned through a non-use of twenty-five years. A like rule was announced in *Comm'rs of Wyandotte Co. v. Presbyterian Church*, 30 Kan. 620, 1 Pac. 109, concerning a lot dedicated by the same plat that contains the land here in controversy, where non-use had continued for an equal or greater period of time. In *Forbes v. Board of Education*, 7 Kan. App. 452, 53 Pac. 533, a block dedicated to the public use as "University square" was held not to be vacated after twenty-six years of non-user. In *City of Ashland v. The Chicago & Northwestern R. Co.*, 105 Wis. 398, 80 N. W. 1101, it was held:

"Mere non-use of a street for any period of time will not operate as an abandonment of rights conferred by a proper dedication, and, until the time arrives when the street is needed for actual use, all persons in possession hold subject to such rights."

In *Coffin v. City of Portland*, 27 Fed. (C. C.) 412, 416, 420, it was held:

"And when, as in this case, the dedication is unconditionally made to a public use, as a levee or landing-place, no formal acceptance of the same is necessary; nor does the existence or continuance of the easement depend on the extent of the use or improvement of the premises, or that they are used or improved at all; and it is even doubtful if the same can be lost by the adverse occupation of the premises by private parties

for any length of time.   Second Dill. Mun. Corp. (3d ed.) § 675.   .   .   .   Where the fact of dedication of a street or landing is in dispute, non-user is evidence, more or less cogent, according to circumstances, against a dedication.   But where, as in this case, the dedication is admitted, the evidence of non-user is immaterial.   The right to the use, once admitted, is not affected by it.   *Barclay v. Howell*, 6 Pet. 505 ( 8 L. Ed. 477).   Property dedicated to public use does not revert to the donor, unless, it may be, where the execution of the use becomes impossible ; and if such property is appropriated to an unauthorized use, a court of equity will compel a specific execution of the trust, by restraining the parties engaged in the unlawful use or by causing the removal of obstructions or hindrances to the lawful one.   *Barclay v. Howell*, 6 Pet. 507 ( 8 L. Ed. 477).   See, also, 2 Dill. Mun. Corp. (3d ed.) § 653."

In *Archer v. Salinas City*, 93 Cal. 43, 51, 28 Pac. 839, 16 L. R. A. 145, the rule was stated :

"Whenever the dedication is complete, the property thereby becomes public property, and the owner loses all control over it or right to its use.   .   .   .   The property dedicated has become public property, impressed with the use for which it was dedicated, and neither can the public divert it from that use, nor can it be lost by adverse possession.   Nor is the effect of such dedication impaired by any delay in the use of the land for which it was set apart.   Such failure to make use of the land does not authorize the owner to resume possession.   The public can thereafter appropriate the land to the use for which it was dedicated whenever convenience or necessity may suggest."

In *Parker v. City of St. Paul*, 47 Minn. 317, 50 N. W. 247, the rule was stated :

"Moreover, streets, levees, and the like are often laid out on land acquired for or dedicated to such purposes with reference to future as well as present requirements, and therefore it is not legitimate to assume

that the property has been abandoned merely because it has not yet been used by the public. It may also be safely laid down as sound, both upon reason and upon considerations of public policy, that until the time arrives when a street, levee, or the like is required for actual public use, and when the public authorities may be properly called upon to open or prepare it for such use, no mere non-user for any length of time, however great, will operate as an abandonment.''

This court, in *Giffen v. City of Olathe*, 44 Kan. 342, 350, 24 Pac. 474, quoted approvingly from the case of *Town of Lakeview v. Le Bahn*, 120 Ill. 92, 9 N. E. 269, as follows :

''Until the time arrives when any street or part of a street is required for actual public use, and when the public authorities may be properly called upon to open it for public use, no mere non-user of any length of time will operate as an abandonment of it, and all persons in possession of it will be presumed to hold subject to the paramount right of the public.''

The court further cites as supporting the same view a number of cases.

Very many more cases could be cited announcing the same doctrine. Indeed, we hardly think from the plaintiffs' argument that they claim that mere non-user will ever constitute an abandonment, but that there must be coupled with such non-user the further fact that the use has ceased because it has become impossible. This we believe to be the rule of the authorities.

In *Coffin v. City of Portland*, 27 Fed. (C. C.) 412, 420, the rule was stated thus :

''Property dedicated to public use does not revert to the donor, unless, it may be, where the execution of the use becomes impossible.''

In *Osage City v. Larkin*, 40 Kan. 206, 19 Pac. 658, 2 L. R. A. 56, 10 Am. St. Rep. 186, it was held :

"An alley retains its character as an alley, although the lots on both sides thereof are owned by one person, and is so intersected by a railroad as to make it practically impassable."

An extreme case is found in *The City of Logansport et al. v. Shirk*, 88 Ind. 563, where it was held that the construction of a canal through a street by the city suspends but does not destroy the easement for a street, and such an easement revives on the abatement of the canal. Many cases are cited in support thereof.

Judge Dillon, in his work on Municipal Corporations, fourth edition, section 653, states the rule as follows :

"Property unconditionally dedicated to public use, or to a particular use, *does not revert to the original owner* except where the execution of the use becomes impossible. If the dedicated property be appropriated to an unauthorized use, equity will cause the trust to be observed or the obstructions removed."

There is nothing to be found in the evidence which goes to show that the use of the tract in question, even were it limited to a boat-landing, has become impossible ; indeed, the evidence shows to the contrary. As a matter of law, we know that the Missouri river is a navigable stream. Vast sums of money have been expended by the general government for its improvement, and even though at the present but little, if any, commerce is being carried on over its waters, or during the immediate past has been, who shall say that the time may not come, possibly soon, when transportation conditions may so change that navigation may again be profitably resumed ? That such a possibility

exists may at least serve to exercise a restraining influence upon railroad rates. Certainly it cannot be said either that navigation upon the river has been permanently abandoned or that by the improvements of wharfage and ways upon the levee it may not again be usable as a landing.

That use is now being made of the levee by railroads, manufacturers and squatters counts for little. Such use, if unauthorized or unwarranted, could be prevented by proper action for that purpose. Certain it is that neither city nor county could give away the rights of the public in a tract of land dedicated to public use by authorizing its use for an unwarranted purpose.

We conclude that neither misuse nor non-use alone will be sufficient to constitute an abandonment of land dedicated to a public use so as to work as a reverter to the dedicators; that non-use, to accomplish it, must have been the result of causes rendering use impossible, or at least so highly improbable as closely to approach the impossible; that in this case no such condition was shown by plaintiffs' evidence, even if we take the narrow view that the dedication was only for the purpose of affording a landing-place for boats and for commerce carried on by river. We are further of the opinion that this narrow view may not be sustained—that the dedication was for other purposes as well; and it may well be doubted that a reverter would necessarily follow the complete drying up of the Missouri river.

The judgment of the trial court is affirmed.

All the Justices concurring.