No. 24,728.

THE STATE OF KANSAS, ex rel. TINKHAM VEALE, County Attorney of Shawnee County, Appellee; v. IDA PAUL, Appellant.

SYLLABUS BY THE COURT.

1. HIGHWAY—Injunction—Removal of Obstructions in Public Highway—Jury Trial Not a Matter of Right. In an action to enjoin the continued maintenance of obstructions to an established public highway a jury is not a matter of right.

2. SAME. There was no issue of fact requiring a jury trial in this case.

3. SAME—Location of Road Determinable from County Records. The original location of the public road in question was clearly determinable from the county records.

4. SAME—*Report of Surveyor.* The fact that the surveyor called to aid the viewers of the road petitioned for ran his line on the west side of the proposed road, instead of along its center according to the general custom of land surveyors, is of no importance when the location of the road is otherwise clearly determinable from the record.

5. SAME—*Road Legally Opened—Only One-half Actually Traveled—Right to Full Width of Road Not Abandoned.* Where a public highway is petitioned for to take the place of another 60-foot highway condemned for a railway right of way, and the new road is viewed, recommended, approved and orderd to be opened as recommended, "of the width of same [60] feet as the old road," and such new road is in fact opened and traveled, such opening and use created and perfected the public right to a highway of the full width of sixty feet; and the fact that the full width of the road has never been thus used and that adjacent property owners were permitted to maintain hedges, fences, shade trees and other obstructions to the center of the established road and that the public travel has always been on the other side of the road, does not lessen the public right to the use of the full width of the road whenever the expanding needs of the public so require.

6. SAME—*No Part of Road on Railway Right of Way.* The record examined, and held not susceptible of a fair interpretation that either the road petitioners, or the viewers, or the board of county commissioners, intended that the highway in controversy should be located partly on the railway right of way and partly on the lands adjacent thereto.

Appeal from Shawnee district court, division No. 1; JAMES A. McCLURE, judge. Opinion filed February 10, 1923. Affirmed.

*W. R. Hazen,* of Topeka, for the appellant.

*C. B. Griffith,* attorney-general, *Tinkham Veale,* county attorney, and *Ralph H. Gaw,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is one of a series of actions brought by the state to clear a public highway of encroachments which prevent and hinder the laying of a paved road in and near the village of Pauline, a few miles south of Topeka.

It appears that for some time prior to 1869 there was a public highway, sixty feet wide, on the section line running north and south on the west side of section 31, town 12, and on the west side of sections 6 and 7 in town 13, all in range 16, Shawnee county. In 1869 the section line thereabout was condemned and appropriated for a width of 100 feet, and for a distance of some two miles, as a right of way for the Santa Fe railroad. This necessitated the abandonment of the public highway, and in consequence thereof,

in 1871, certain interested householders petitioned the board of county commissioners to lay out a new county road contiguous to and parallel with the railway right of way on its east side. The county board appointed viewers, who recommended that the road be changed as prayed for, and in January, 1872, the board adopted the viewers' report and ordered the road opened. The road has been a public, traveled highway ever since. As the years passed, a small village arose along this highway near the railway station at Pauline. Several tracts were conveyed by the early owners of section 31, and thereon have been erected, facing westward, on and near the east side of the highway, a schoolhouse, a church, several residences, and a small store and garage. Shade and fruit trees, fences and hedges also exist thereabout.

Some months ago the board of county commissioners set about the construction of a paved road in that locality, federal-aid project No. 106 of Capitol Highway, and the precise limits of the public road through Pauline for the first time became important. It was then discovered that apparently the defendant's hedge and fence and some of her shade trees encroached to the center of the highway, or to a line thirty feet east of the Santa Fe right of way. In some of the other lawsuits of this series, the front yards of the property owners are also apparently in the highway, and in one or two instances there are buildings which encroach thereon.

On the issues joined and the evidence adduced, the trial judges of the Shawnee district court sat together so as to expedite the causes and to lessen the burden of repetition of testimony in the several actions involving the same principal questions, and the court made findings of fact and conclusions of law whose general tenor was favorable to the plaintiff, and held that defendant was unlawfully obstructing the highway, that her fence was a nuisance, and that it should be abated and removed, and that she be enjoined from holding possession of any portion of the highway and from excluding the public therefrom, and from hindering or interfering with the construction of the permanent improvement thereof.

Judgment was entered accordingly, and defendant appeals, urging various points, which will be noted in the order of their presentation.

The first error relates to the denial of a jury trial. She contends that the possession of real estate was in issue, and also the precise location of the road as interpreted by the use thereof for fifty years.

But this contention is unsound. A lawsuit between the state and an individual over an alleged obstruction to the highway and the incidental question of the precise location and extent of the highway is not a controversy between litigants for the mere possession or recovery of a piece of real property. (Gen. Stat. 1868, ch. 80, §§ 266, 267; Civ. Code § 279); it is a suit in equity to be tried by the court. (*Woodman v. Davis,* 32 Kan. 344, 4 Pac. 262; *Cole v. Drum,* 109 Kan. 148, 153, 197 Pac. 1105.) And so far as the question of use is concerned, a jury would serve no purpose because the state concedes and the findings of fact determine that the east half of the road has never been actually traveled by the public but has always been occupied by the defendant and her predecessors in title. So there was here no jury question as in the case of *Cemetery Association v. Meninger,* 14 Kan. 312, cited by defendant.

But it is urged that the original location of the road cannot be determined from the record. We are constrained to hold otherwise. The original road down the section line was sixty feet wide. The railway straddled the section line with its right of way 100 feet wide. The new road petitioned for, viewed, recommended, and ordered opened for travel was immediately adjacent to and parallel with the railway right of way, and was also sixty feet wide. That the field notes of the surveyor who accompanied the viewers apparently show that he ran his line along the east side of the railway right of way instead of down the center of the new proposed highway as is customary when a new road is being surveyed, is of small consequence in a case where the record is so clear and complete as the one here presented. (*Shaffer v. Weech,* 34 Kan. 595, 9 Pac. 202; *Molyneux v. Grimes,* 78 Kan. 830, 98 Pac. 278; *Hughes v. Veal,* 84 Kan. 534, 540, 114 Pac. 1081.)

But it is said that this new road sixty feet wide was never opened. It was opened for its entire length but concededly has never been physically opened and used for its entire width. All the travel on this road for the fifty years of its existence has been on the west side of it, leaving the defendant's fence and shade trees unmolested. However, it is as well settled by judicial precedent as it is clear by common sense that a road regularly laid out and traveled by the public does not have to be used for its entire width in order to preserve its public character. Very few roads, except in highly congested communities, are so used. In sparsely settled rural districts the beaten path is usually of the width of the wagon tracks

or other vehicles which travel thereon. Not infrequently prairie grass is mowed and garnered on the roadsides; sometimes crops are grown thereon. None the less, the full width of the established road is for public travel and public use whenever the expanding needs of the public so require. In *Webb v. Comm'rs of Butler Co.*, 52 Kan. 375, 34 Pac. 973, the controlling facts were analogous to those under consideration here. A highway had been laid out on the western line of Webb's premises, one-half the width of which was on his land. There was a hedge fence on his western line, and for ten years or more he farmed and cultivated the land up to the hedge fence. The public used the west side of this road and did not use the east side of it within Webb's hedge fence except when compelled to escape mud in the traveled part of the road. Webb brought injunction proceedings against the county commissioners to enjoin them from removing his fence and obstructions and from opening the unused side of, the highway occupied by him. The injunction was denied. This court said:

"There is no claim that the west half of the road as established was ever obstructed or closed. It was open the full length of the west line of plaintiff's premises, and he has shown that there was considerable travel over the same. Having been legally authorized, laid out, and used, it is, in legal contemplation a public highway. The fact that the public may not use or travel over the full width of such a highway will not operate to narrow it. It is frequently the case that the full width of country roads is not improved or used for the reason that the necessities of the public for the time being do not require it; but such limited use will not lessen the right of the public to use the entire width of the highway when the increased travel and the exigencies of the public make it necessary. . . . The encroachments by the plaintiff upon this highway gave him no rights as against the public." (p. 378; see, also, note in 6 A. L. R. 1210.)

The defendant cites and relies on the act of 1879 (ch. 150, § 1), Gen. Stat. 1901, § 6058, now repealed (Laws 1911, ch. 248), which provided that if any part of an authorized road should remain unopened for public use for seven years after the order was made for its opening, it should be vacated; but that statute concerned itself with the result of nonuser of some part of the longitudinal length of the road, and did not govern the matter of nonuser of the road's established width. (*Webb v. Comm'rs of Butler Co.*, supra.)

Defendant lays stress upon the field notes and plat of the county surveyor who aided the viewers in making the survey. It is undeniable that the surveyor ran his line along and upon the eastern limits of the Santa Fe right of way, just fifty feet east of the cen-

ter of the railway track and parallel thereto. From this she argues that this line, to be in accordance with the custom of surveyors (*Quinn v. Baage*, 138 Iowa 426; *The People v. Commissioners of Highways of Redhook*, 13 Wend. [N. Y.] 310), necessarily means that such line was the center of the new highway, and that only a thirty-foot strip of land east of the right of way was devoted to the new road, and that the other half of its width was taken, or intended to be taken, from the eastern side of the railway right of way. The argument is not at all convincing. The public had lost a sixty-foot roadway by railway condemnation. The railway condemnation included a strip of 100 feet along the section line. The new road applied for, viewed, recommended, approved and established was a 60-foot road adjacent to and parallel to the railway right of way. "It being the intention of your petitioners"—so reads the road petition—"to ask for the straightening and relocating of the county road running across [north and south] said section so that the same shall run on the east side of the said railroad . . ."

In that early time when land was cheap public roads had a customary width of sixty feet, and the statute provided:

"The width of all county roads shall be determined by the viewers, and shall be not less than forty feet nor more than sixty feet wide." (Gen. Stat. 1868, ch. 89, § 31.)

And in this case the viewers' report reads:

"We are of the opinion that the said road . . . should be changed as petitioned for, that is . . . and recommend that it be confirmed and opened as located and surveyed, of the width of same [60] feet as the old road."

The commissioners' order endorsed on this report reads:

"Ordered that the within road be adopted, confirmed and ordered opened by order of the Board Jan. 3, 1872.　　　Wm. Wellhouse, *Chairman.*"

We can give no countenance to the theory that part of the railway right of way was taken to establish this relocated highway. There is nothing in the record to intimate that an encroachment on the right of way was contemplated, and the fact that in after years the public travel in some places did reach beyond the western limits of the road and on to the railway property, and that some culverts have been constructed the western edges of which are on the right of way detract not at all from the facts of controlling significance in this case.

Like the trial judges, this court appreciates the importance of

this case to the defendant and those similarly situated, but the record is clear that she has no defense to the state's demand that she now remove the obstructions which she has hitherto been suffered to maintain within the sixty-foot limits of the established highway. Hitherto the state and the traveling public have found it unnecessary to discommode the defendant. Now the construction of the paved road with its requisite banks and ditches makes it imperative that defendant's unlawful obstructions be removed.

The other matters pressed on our attention have had our studious consideration, but they do not lessen the force of what we have already said, nor do they require discussion.

The judgment is affirmed.

HARVEY, J. (concurring specially): I concur in the result. The controlling features of this case lead to a definite conclusion and leave no room for speculation as to what might have been intended.

It is the settled law in this state, and generally, that in the absence of special statutory authority, acting under the general statutes to lay out streets and highways, municipal and county officials have no authority to lay out a street or highway longitudinally upon the right of way of a railroad company. (*U. P. Rly. Co. v. Kindred*, 43 Kan. 134, 135, 23 Pac. 112; *City of Bridgeport v. New York & New Haven R. R. Co.*, 36 Conn. 255; *New Jersey Southern R. R. Co. v. Long Branch Commissioners*, 39 N. J. L. 28; *Road from Great Bend to Great Bend Village*, 2 Penn. Co. Ct. Rep. 335; *Nanticoke Bridge*, 40 Penn. Super. Ct. Rep. 345; *Portland Ry. Light & Power Co. v. City of Portland*, 181 Fed. 632, 634; *City of Fort Wayne v. The Lake Shore and Michigan Ry. Co., etc.*, 132 Ind. 558, 15 Cyc. 619, 10 A. & E. Encycl. of L., 2d ed., 1096; 3 Dillon on Municipal Corporations, 5th ed., § 1020; 3 Elliott on Railroads, 3d ed., § 1566.)

It is also the general rule that, in the absence of anything in the report of the viewers, or of the report and plat of the surveyor accompanying the report of the viewers, to show a different intention, where the location of a road is described by a line, the line is presumed to be the center of the road. (*Freshour v. Hihn*, 99 Cal. 443; *Quim v. Baage*, 138 Iowa 426; *Terrell v. Tarrant County*, 8 Tex. Civ. App. 563) ; but there is no statute requiring such a construction. (*Cloud County v. Morgan*, 7 Kan. App. 213), and such presumption is overcome by anything in the report of the surveyor or the viewers showing that a different meaning was intended. So, where

The State, ex rel. v. Paul.

the viewers' report and the map to which it refers show that the line given was intended to mark the northern and western line of the road, it was held in *Graham v. Ballard,* 157 Cal. 96, that the line given, marked the side of the road and not the middle. In like manner, where the viewers' report gave the width of the road and its location along the north bank of a stream, it was held in *Hays v. The State,* 8 Ind. 425, that the north bank of the stream was the south line of the road and not the middle line, it being evident that the viewers did not intend to locate one half of the road in the river; and where the viewers' report gave the width of the road and described the line (after stating the point of beginning), as "running thence easterly along the north line of the said Michigan Central Railroad," it was held, in *McDowald v. Payne* et al., 114 Ind. 359, 364, that the whole width of the highway was north of and adjoining the right of way of the railroad, as the right of way of the railroad cannot be appropriated for highway purposes.

The report here in question is very like the case last cited and falls clearly within the rule of it. The surveyor locates the line of the road thus: (after stating the point of beginning) "running thence northerly parallel with the railroad track and at a distance of fifty feet from the center of the same" and the viewers' report was "that the said road should be changed as petitioned for and recommend that it be confirmed and opened as located and surveyed for the width of sixty feet" as the old road.

It will be seen there is nothing ambiguous about the surveyor's description of the location of the road. If a road was stated as being located fifty feet from a house, the natural meaning would be that the distance was fifty feet from the house to the nearest part of the road. Hence, it is perfectly clear, in view of the authorities above cited, and from the wording of the report of the surveyor itself, that the fifty feet from the center of the railroad track was intended to and did, in fact, mark the west line of the road. The road being sixty feet wide, all of it lies east of that line. I think the report of the surveyor and viewers in this case is open to no other interpretation, and that this is determinative of this case.