**FINLAY v. UNION PAC. R. CO. et al.**
(KANSAS CITY, KAN., Third-Party
Defendant).

No. 5144.

District Court, D. Kansas,
First Division.

Dec. 13, 1946.

A. Z. Patterson, D. C. Chastain, and Gardner Smith, all of Kansas City, Mo., and Louis R. Gates, of Kansas City, Kan., for plaintiff.

T. M. Lillard, O. B. Eidson, P. H. Lewis, and James W. Porter, all of Topeka, Kan., and N. E. Snyder, of Kansas City, Kan., for Union Pac. R. Co.

Fred Robertson, Edward M. Boddington, and J. O. Emerson, of Kansas City, Kan., for Kansas City Public Service Co.

J. E. DuMars and Clayton M. Davis, both of Topeka, Kan., for Aaron Colnon and Joseph B. Fleming, trustees.

Alton H. Skinner, City Atty., and Joseph A. Lynch, Deputy City Atty., both of Kansas City, Kan., for City of Kansas City, Kan.

MELLOTT, District Judge.

This case is before the court upon a motion for Summary Judgment, filed by the defendants and the City of Kansas City, Kansas, third party defendant. By amended complaint, filed subsequent to removal from the District Court of Wyandotte County, Kansas, to this court, plaintiff, a resident of Nebraska, seeks judgment against the defendant railroad companies in the amount of $45,000 for damages alleged to have been sustained by, or as the result of, raising a portion of a viaduct on 18th Street in Kansas City, Kansas, and detaching a concrete driveway or approach attached to it and connected with a building owned by plaintiff. Jurisdiction of this court is conceded, the amount in controversy, exclusive of interest and costs exceeding $3000 and diversity of citizenship existing.

Union Pacific Railroad Co. (hereinafter Union Pacific) is a corporation duly organized under the laws of the State of Utah. The trustees named in the caption are the duly qualified trustees of the Chicago, Rock Island and Pacific Railway Company, a corporation (hereinafter Rock Island). Kansas City Public Service Company (hereinafter Public Service) is a corporation duly organized under the laws of the State of Missouri. Each of the defendants has been duly authorized to transact business in Kansas as a foreign corporation. Public Service operates a street railway system in Kansas City, Kansas. Union Pacific and Rock Island operate steam railways and maintain tracks and switching facilities in Kansas City, Kansas. The three will sometimes be referred to herein as the defendants or the defendant railroad companies.

The city of Kansas City, Kansas (hereinafter the City) is a duly organized city of the first class, its governing body consisting of three commissioners. On motion of the defendants it was made a third-party defendant, it being alleged that the reconstruction work giving rise to the present controversy was done pursuant to orders and directions of the City and in strict accordance with the plans and ordinances adopted by it and that it may be liable, if in fact and law any liability exists, either to the plaintiff or to the defendants. The City answered, denying any liability and praying, inter alia, that this court direct removal of a purpresture placed in Eighteenth Street by plaintiff or his predecessor in title and restrain him from replacing or restoring it. The alleged purpresture consists of supports and portions of a concrete driveway previously connected to the viaduct by plaintiff's predecessor in title for ingress to and egress from a brick building east of 18th Street. The detaching of the driveway or approach by the defendant railroad companies in connection with a reconstruction of the viaduct by them, pursuant to ordinances of the City, is the genesis of the present controversy.

Counsel for the several parties, as contemplated by the Rules of Civil Procedure and in a commendable effort to conserve the time of the interested parties and of the court, have admitted, in their pleadings, briefs, at pre-trial conferences, during argument upon motions and in response to requests for admissions, all of the basic facts hereinafter alluded to. The defendant railroad companies and the third-party defendant, the City, insist the admissions collectively show that, except as to the amount of damages, there is no genuine issue as to any material fact and that they are entitled to a judgment as a matter of law. Federal Rules of Civil Procedure, rule 56 (c), 28 U.S.C.A following section 723c. The motion for summary judgment is resisted by the plaintiff, who seems to make a dual contention: One, that the admitted facts entitle him to judgment as a matter of law; and, two, that he is entitled to a trial upon several contested issues of fact not admitted at this stage of the case. These contentions will be considered in due time; but first the admitted facts will be recited at some length.

18th Street in Kansas City was duly established and laid out as a street prior to the year 1915. It extends north and south, intersecting, among other streets, Delaware Street (now Bayard Avenue) and Muncie Boulevard, duly established streets extending east and west. Between the two last mentioned streets are located tracks belonging to Union Pacific and Rock Island. Plaintiff's property lies between the most northern tracks, belonging to Union Pacific, and Muncie Boulevard.

The tracks above referred to were laid across 18th Street at grade. In 1915 the City took steps to provide a viaduct on 18th Street over the tracks and grounds of Union Pacific and Rock Island from a point near Muncie Boulevard to a point near Delaware Avenue of sufficient strength to permit the operation over it of street cars of Public Service or its predecessor. 18th Street directly north of Muncie Boulevard ascends a hill several blocks, the established grade immediately north of Muncie Boulevard being approximately thirty feet above the level of the tracks.

On April 29, 1915 the City duly enacted Ordinance No. 13003 providing for the construction of a viaduct from a point near Muncie Boulevard to a point near Delaware Street according to plans and specifications then on file in the office of the City Clerk and approved by the Board of Commissioners of the City. Although the viaduct was to be constructed by the City and to remain under its control, the cost of the construction was to be borne by the defendant railroad companies in the proportions set out in an agreement made a part of the ordinance.

By the agreement above referred to, the City covenanted that within thirty days after completion of the viaduct it would close, by ordinance, and vacate as a grade crossing, that part of 18th Street over the tracks and rights of way of Union Pacific and Rock Island and that the City should provide, in the manner required by law, for the appraising and assessing of dam-

ages, if any, which should be done to property owners by reason of the construction of the viaduct. Appraisers were duly appointed to assess the damages; but no damages were determined to have been sustained and no objections to the appraisers' report were ever made or filed.

The construction of the viaduct was begun and completed in accordance with the ordinance and plans and thereafter, on December 5, 1918, an ordinance was passed vacating the portion of 18th Street lying between the south line of the land owned by Rock Island and the north line of the right of way of Union Pacific.

Plaintiff's predecessors in title owned the land lying immediately north of the north line of Union Pacific's right of way and abutting the east line of 18th Street. The property extended north along the east line of 18th Street approximately 140 feet to the south line of Muncie Boulevard. The portion of 18th Street contiguous to, and directly west of, this property has never been formally vacated by any ordinance of the City.

In constructing the viaduct under Ordinance No. 13003 and the plans and specifications in connection therewith a sidewalk was provided, approximately four feet in width, along the east side of the viaduct and a steel railing approximately four feet high was erected along the east edge of the viaduct and sidewalk.

At a time not definitely disclosed by the record, between the beginning of the year 1925 and the end of the year 1927, the City Ice Company, plaintiff's predecessor in title, constructed a brick building on a portion of its land lying north of Union Pacific's right of way and south of Muncie Boulevard, abutting the east line of 18th Street as such street had existed prior to 1915. Contemporaneously with the construction of the building, or soon thereafter, a steel and concrete driveway or approach, supported by steel piers, was constructed from the east side of the traveled way of the viaduct to the west wall of the brick building. The driveway was constructed without written permission or formal authorization of the City and in constructing it the sidewalk and

protective railing extending along the east side of the viaduct were removed along that portion of the viaduct. The driveway extended partly over the ground level of 18th Street and partly over the ground level of the premises of the City Ice Company adjacent to the east boundary of 18th Street. It was used by the City Ice Company to deliver ice to the brick building and probably by the public in the purchase of ice from the City Ice Company.

The defendant railroad companies made no protest to, nor did any of them ever try to interfere with the action of, plaintiff's predecessor in title in erecting the driveway approach and connecting it with the viaduct; and, after the construction of such approach, none of them ever made any protest or objection to the City Ice Company with reference to the use made by it and the public of such approach.

18th Street as laid out, established and existing north of Union Pacific's right of way at the time the brick building was constructed was 60 feet in width. The traveled way of the viaduct and sidewalks thereon was approximately 28 feet above the ground where it passed the brick building. The traveled way was supported by steel piers resting upon concrete bases, the piers being 15 feet west of the east line of 18th Street and 15 feet east of the west line of 18th Street except two concrete columns located upon the north line of Union Pacific's right of way. The latter two columns were slightly in excess of 6 feet from the respective boundaries of 18th Street.

Upon completion of the viaduct as originally constructed and as it has since existed there was and is (except in so far as it may be interfered with by supports of the driveway approach erected by plaintiff's predecessor in title) free passage upon the ground within the boundaries of 18th Street both on the east and on the west side of the piers supporting the viaduct. Muncie Boulevard was at all times, and now is, open to travel east and west between the pier near the south line and the pier near the north line of Muncie Boulevard. Said street is, and at all times has been, open to travel and is being used

by vehicles without obstruction by reason of the viaduct; but it is a dirt road, not kept in good repair and frequently it becomes "rutty" after rains.

Prior to the repair work and reconstruction hereinafter referred to, there had been a dip, depression or sharp change in the contour of the viaduct along the traveled way (near Bents 9, 10 and 11) opposite the property presently in issue. The City Engineer and the City determined that it constituted an unsafe condition and a hazard to the traveling public. They, therefore, determined that it should be removed.

On December 19, 1940 Ordinance No. 31755 was enacted by the City, two members of the Commission being present. By this ordinance it was deemed and declared necessary, for the safety and protection of the public, that the 18th Street Viaduct and its approaches over the tracks of Union Pacific and Rock Island be reconstructed, the costs of such reconstruction to be borne by the defendant railroads in the proportions therein stated. By the ordinance the defendant railroads were "required to proceed with the reconstruction of said viaduct and its approaches within three months from the effective date" of the ordinance. It became effective upon its publication.

After the enactment of the ordinance, plans and specifications for the work were prepared, submitted to, and approved by, the City, and on November 28, 1941, the City, two commissioners being present and consenting thereto, passed Ordinance No. 32254. This ordinance became effective upon its publication. By it the plans and specifications theretofore prepared and agreed upon by the Engineering Departments of the City and railroads were approved by the governing body. It was ordained that a notice to contractors inviting bids for the work to be done be given, the work to be in strict accordance with the provisions of Section 9 of Ordinance No. 13003 and the cost to be paid by the defendant railroads.

Two sets of plans and specifications were prepared, the first consisting of three sheets and the second of eight sheets. The first set was approved and adopted by Ordinance No. 32254. The second shows the details of the work as the improvement was made in 1944. The paving of the viaduct was done by an independent contractor and the repair of the structural parts was performed by employees of Rock Island. The first set of plans showed a portion of the work to be done and the location, with reference to the viaduct, of the ice house and platform or approach here in issue; but therein no provision was made for the severance of the platform or approach from the viaduct or for the construction of a handrailing or sidewalk along the portion abutting plaintiff's property. Both sets of plans, however, showed that a change in the contour of the traveled portion of the viaduct was to be made, raising it approximately 17 inches at the north side of the driveway or approach and 29 inches at its south side. This was done. In raising the traveled portion of the viaduct it was necessary to sever the driveway or approach from it.

Subsequent to the passage of Ordinance No. 32254 and to the beginning of the work of repair and reconstruction provided for therein, plaintiff became the grantee in a warranty deed dated May 27, 1943 from the City Ice Company by which, for a consideration of $7,500.00, the premises upon which the brick building was located were conveyed. The grantee in the deed covenanted that for a period of 20 years the land and the building should not be used for the sale or manufacture of ice. The premises and the building have not been used for any purpose since 1939.

A summarization of the lengthy and carefully prepared pleadings of the parties is not required and would unduly extend this opinion. As indicated at the outset, the issue is whether the defendant railroad companies became liable in damages to the plaintiff by reason of detaching the approach connecting the viaduct to his building. The circumstances surrounding it have now been narrated. A subsidiary or ancillary question is whether a purpresture exists, entitling the City to the relief which it seeks under its counter-claim. The alternative allegations of the Amended Complaint, denied by all defendants, are that the means of access to the viaduct con-

stituted a valuable property right, "owned by the City Ice Company of Kansas City and * * * now owned by plaintiff," the deprivation of which caused him to be damaged in the sum of $45,000.00. Under Count I it is averred, in essence, that the happening of the events hereinbefore related—the erection of a viaduct the floor level of which was 28 feet above the ground level, the closing and filling up of a portion of 18th Street north of Muncie Boulevard by stone piers and an earth approach, the vacation of the portion of 18th Street crossed by the railroad tracks, and the acts of the City in rendering it impossible for the public to travel or to use the portion of 18th Street abutting his property—had caused 18th Street to be and become vacated, as a result of which the "portion of the ground level of 18th Street (abutting the property in issue) reverted to and became the property of * * * [his] predecessor in title." Under Count II it is alleged that if the portion of 18th Street over which the driveway approach was located had not become vacated and reverted to plaintiff's predecessor in title, as alleged in Count I, then the portion of the driveway approach and piers which supported it had been erected in 18th Street "with the knowledge, consent and acquiescence of the City," with the purpose "that they should become a part of the 18th Street Viaduct"; that the approach "did not obstruct or interfere with any travel over the viaduct but rather increased the use as a street which the public could make of the viaduct"; "that by reason of such user by the public," with "the knowledge, consent and acquiescence of said City, a common law dedication for street purposes was made and occurred of that portion of said concrete driveway which extended west of the east line of 18th Street"; and that its removal "substantially destroyed" plaintiff's property.

■ The allegations just referred to· are supplemented by others, attacking the validity, and questioning the effect, of the ordinances to which reference has been made. They will be noticed more fully in reviewing the arguments upon brief. First,

however, consideration will be given to plaintiff's contention that he is entitled to trial upon material issues of fact, other than the amount of damages; for it is not the province of a trial court to decide, under a motion for summary judgment, bona fide "issue of fact which may be presented, but to discover if any real issue exists." Walling v. Fairmount Creamery Co., 8 Cir., 139 F.2d 318, 322. However, "The purpose of the rule (Rule 56) is to permit the trier to pierce formal allegations of facts in pleadings and grant relief by summary judgment when it appears from uncontroverted facts * * * [shown] * * * that there are * * * no genuine issues for trial." Schreffler v. Bowles, 10 Cir., 153 F.2d 1, 3.

■ The first alleged issue of fact remaining to be tried, under plaintiff's theory, is stated thus:

The defendant railroads deny that the ordinances in question require them to pay the cost and damages of reconstructing the viaduct.

This court cannot spell out of the above statement any issue of fact requiring the production of evidence. The question is one of law, which is probably moot inasmuch as the cost of reconstructing the viaduct has already been paid by the railroads. The applicable Kansas Statute [1] empowers the City to require railroad companies to "erect, construct, reconstruct, complete and keep in repair" viaducts such as the one here in issue. While the railroad companies argue upon brief that they cannot be required to pay damages to property owners by reason of a reconstruction of a viaduct inasmuch as the statute, by its terms, seems to require the payment of damages only in connection with an original construction, the question need not be decided in the present case and is therefore passed.

■ The next statement by plaintiff is that

The defendants deny the plaintiff's allegations that any portion of 18th Street underneath the viaduct was in fact never used by the public as a street after the erection of the viaduct.

---

[1] Sec. 13-1903 General Statutes, 1935.

■

As this court interprets the Kansas decisions the question of fact is wholly immaterial. It is well-settled that neither misuse nor nonuse operates to cause a reverter to abutting property owners of land once dedicated to the public. McAlpine v. Chicago Great Western R. Co., 68 Kan. 207, 75 P. 73, 64 L.R.A. 85; Gadarl v. City of Humboldt, 87 Kan. 41, 123 P. 764; The State ex rel. v. Paul, 112 Kan. 826, 213 P. 165; Swope v. City of Kansas City, Kansas, 10 Cir., 132 F.2d 788. The parties have admitted that the piers on the east side of the viaduct were 15 feet west of the east line of 18th Street. The admitted facts clearly support the view that free passage upon the ground within the east 15 feet of 18th Street existed, except in so far as it was interfered with by the supports placed therein by plaintiff's predecessor in title. Whether it was ever used, however, as stated above, is immaterial.

Plaintiff asserts it is a question of fact whether one of the concrete columns supporting the viaduct is only 6.95 feet west of the west line of his property. The defendants have admitted, both orally and upon brief, that one of the columns is but 6.95 feet west of the east line of 18th Street, half of it being on the Union Pacific right of way on the vacated portion of 18th Street, and half on the unvacated portion of 18th Street just north of Union Pacific's property line. The photographs support this conclusion. However, if the admissions do not establish it conclusively, the court is of the opinion it is immaterial to a decision on the motion.

The eleven contentions made by the plaintiff as to the issues of fact not admitted have all been examined carefully by the court. It would serve no good purpose to set them out in haec verba. Most of them have now been admitted by the defendants upon brief. None of them, in the opinion of the court, could possibly require a different conclusion upon the issue of law. It is beside the point whether the defendants admit or deny that the use made of the driveway or approach by the plaintiff and the public "did not interfere with the use of the driveway by the public" or whether the driveway was kept free of obstructions.

Nor would their admission, or failure to admit, that the approach "constituted the only usable and practical means of ingress and egress" to plaintiff's property either be conclusive upon this court or aid it in determining the issue of law presented by the pleadings. Whether a building permit was ever issued for the construction of the building is also probably wholly immaterial; but the admissions do show that a permit had been issued to the City Ice Company to build a "Factory Brick or Tile" at a cost of $25,000 on the real estate in issue. Plaintiff's contention that the defendants have failed to admit that his predecessors in title "were the owners of the property" on the date the warranty deeds were delivered was probably advanced under the mistaken belief that the defendants had merely admitted the execution and delivery of the deeds. Such is the purport of the admission of the City. The defendant railroad companies, however, admit that the grantors "were the owners" at the time of the execution and recording of the deeds. The photographs clearly show, and the oral arguments and briefs of the parties indicate, there is no serious dispute that "the floor of the viaduct was of the same level as the driveway approach during the period from 1928 to 1944;" so the failure to admit this fact specifically is not an insurmountable obstacle to decision on the motion.

The last two contentions of the plaintiff on this phase of the controversy, however, merit more detailed discussion. At the hearing upon the motion it was stated:

"The defendants contend that the reconstruction of the viaduct was done in accordance with the plans and specifications referred to and approved by Ordinance 32254. This is denied by the plaintiff who contends that the plans under which the work was done in 1944 were different from the plans referred to in the Ordinance and that the later plans were not drawn until after the passage of the Ordinance.

"The defendants allege that the reconstruction and repair of the viaduct in 1944 was for the purpose of removing a dip in the viaduct and restoring the floor level to approximately the same level which was provided for in Ordinance 13003. This is

disputed by the plaintiff who alleges and shows by affidavit that in 1944 the floor level of that portion of the viaduct abutting the driveway was raised substantially higher than that provided by Ordinance 13003."

A careful analysis of the statement of the admitted facts, heretofore made by the court, will disclose that it, in effect, has accepted plaintiff's version—that the first set of plans was approved and adopted by Ordinance No. 32254, the second set showing the details of the work as the improvement was made in 1944. These facts are shown by plaintiff's affidavits and are not controverted by the defendants. Moreover, the parties have stipulated that the three sheets comprising the first set "are the plans and specifications referred to, approved and adopted by Ordinance No. 32254" and the eight sheets comprising the second set "are on file in the Office of the City Engineer * * * and are the plans and specifications showing the details of the work as the improvement * * * was made in 1944." The court is therefore of the opinion and holds that the first of the two contentions quoted above is without substantial merit.

▉ The last contention raises no issuable fact. The uncontroverted affidavit of the City Engineer shows that the work was undertaken for the purpose of changing the contour of the viaduct and removing a dip, which constituted a traffic hazard. All parties admit that the viaduct was raised—17 inches at the north side of the approach and 29 inches at the south side. It is immaterial in this case what motivated the City in making the change, in enacting the ordinances, or in adopting the plans. City of Emporia v. Humphrey, 132 Kan. 682, 686, 297 P. 712. Assuming, without deciding, that the railroad companies might have successfully assailed the proceedings on the ground that the reconstruction should have been limited to restoring the viaduct to the condition and level prescribed by the original ordinance, that cannot be done in a collateral proceeding such as this.

It is apparent, from what has been said, that this court is of the opinion and it is now held there is no genuine issue as to any material fact, except as to the amount of damages. The motion for summary judgment will therefore be considered.

Some of the applicable Kansas Statutes pertaining to the general powers of the governing body of a City of the first class and the vacation of its streets and alleys are shown in the margin.[2] Defendants contend that a vacation of 18th Street—i. e. the portion under the viaduct abutting plaintiff's property—could not have been accomplished otherwise than by the enactment of an ordinance to that effect. Statutes somewhat similar have been so construed by courts of other states.[3] No case decided by the Supreme Court of Kansas categorically enunciating such a rule has been cited or found and this court declines to so hold. But this is not to say that the court can, or should, adopt the view espoused by the plaintiff—i. e. that under the present facts a vacation of the street abutting his property had occurred.

In City of Leavenworth v. Douglass, 59 Kan. 416, 53 P. 123; it was held that a city ordinance authorizing a railroad company to construct a union depot in, and entirely across, a street of the city on condition that the company buy and dedicate to the city an adjoining strip of land for use as a street was, in effect, a vacation of the street, and that the defendant in error had not been deprived of access to his prop-

2 Sec. 13-401 General Statutes of Kansas 1935. "The governing body shall have the care, management and control of the city and its property and finances; and shall have power to enact ordinances for all the purposes named and provided for in this article not repugnant to the constitution and laws of this state, and to alter, amend, modify and repeal such ordinances."

Sec. 13-443, id. "To vacate and close any street or alley or portion thereof; and when any street or alley is vacated it shall revert to the owners of land thereto adjoining on each side, in proportion to the frontage of such land, * * *."

3 See e.g. the Utah cases cited in the recent opinion of the Circuit Court of Appeals for the Tenth Circuit in Provo City v. The Denver and Rio Grande Western Railroad, 156 F.2d 710.

erty since provision had been made for the construction of a street on the adjoining property dedicated by the railroad company. The plaintiff contends that this case and City of Seneca v. St. Joseph & G. I. R. Co., 94 Kan. 323, 146 P. 1168, 1169, establish that the passing of Ordinance No. 13003 by the City, effectuated a vacation of 18th Street for its entire width because the street, by the construction of the viaduct, was thus rendered unusable for street purposes.

In City of Seneca v. St. Joseph & G. S. R. Co., supra, it was held that an ordinance authorizing the railway company to use certain designated, lengthwise, portions of Hartford and Baltimore streets in the city for "railroad purposes" did not, in effect, vacate the designated portions of the street. The railway company, relying upon the ordinance, had built its station and yards partially in the street, leaving a narrow strip which could be used only for pedestrian traffic and had so maintained the buildings and yards for forty years. To the railway company's contention that the city should be estopped from denying that the streets had been vacated, the court said:

"So far as [it] affects the ground upon which the depot stands, this principle may perhaps apply. But it does not conclusively appear from the evidence that any other part of the street has been occupied in such a way as to be absolutely inconsistent with the retention of any right of passage by the public, * * *."

The court distinguished City of Leavenworth v. Douglass, supra, on the ground that the ordinance under consideration in that case had authorized the construction of the union depot entirely across the designated parts of the street, while the ordinance then under consideration had not fixed the location of a depot or other building.

The cases, collectively, constrain this court to hold that the enactment of Ordinance No. 13003 and the construction of the viaduct did not effectuate a vacation of the portion of 18th Street abutting plaintiff's property. In reaching this conclusion the court has not ignored or overlooked plaintiff's argument to the effect that the construction of the earth and stone abutment immediately north of Muncie Boulevard, the vacation of 18th Street immediately south of his property, the erection of the steel and concrete piers and steel crossbeams in the center of the street, the chronic poor condition of Muncie Boulevard, its relative lack of accessability, and the other circumstances pointed out in his brief, all tended to prevent ready access to his building. But access was not totally cut off or denied him; for Muncie Boulevard was and is "one of the public ways in the City," even though "evidence of any work having been done to maintain" it is negligible, and at least 15 feet of 18th Street was passable. As this court construes the Kansas decisions it would err in holding that a vacation of the portion of 18th Street abutting plaintiff's property had occurred.

Plaintiff does not seriously argue that there had been a common law dedication of the portion of the driveway approach located in 18th Street as alleged in Count II of his complaint; but he does urge that no right was conferred on the defendant railroad companies, by Ordinance 32254, to do the reconstruction work in issue; that the ordinance in so far as it purported to authorize the raising of the grade, was void; that it did not authorize the railroad companies to reconstruct the viaduct but merely required them to pay the cost; that in reconstructing the viaduct they acted as volunteers and hence cannot claim the exemption from damage to abutting property owners otherwise possibly available to them under cases such as those cited in one of the most recent expressions by the Supreme Court of Kansas on the subject;[4] that the plans and specifications referred to in the ordinance—the first set of plans—do not provide for the severance of the driveway or erection of handrails in front of plaintiff's property; that no purpresture exists, the title to the property upon which the approach is located having vested in plaintiff's predecessors in title and passed to

4 Tillotson v. Fair, 160 Kan. 81, 159 P. 2d 471.

him as an appurtenance to his realty; that the railroads have no legal right to complain that the structure is an encroachment or purpresture; and that, even if he did not have title to the portion of the street on which the driveway approach is located, his use and possession of the property conferred upon him a right to maintain an action against the railroad companies for unlawfully interfering with it.

Assuming for the purpose of argument that the validity of the ordinance may be attacked in this case, the court is satisfied that it was, and is, a valid ordinance notwithstanding the fact it was enacted at a meeting of the city commissioners at which but two of the three commissioners were present. Thus a "three-fourths vote" of the governing body was not cast. Such a requirement seems to be made by one section of the Kansas Statutes[5] for the change of grade of "any street or alley" established in the manner required by law. But no change of grade of a street or alley can be gleaned from the present record. The City merely changed the contour of one of its viaducts, removing a dip which constituted a traffic hazard. This it had a right to do by ordinance duly enacted. Nor is it material that the first set of plans did not show all of the details of the work to be done. The suggestion that the railroad companies were mere "volunteers" is not supported by the record, by reason, or by logic. They were required to "reconstruct" the viaduct by the statutes of Kansas; and, inasmuch as the ordinance provided that they should "pay for the cost thereof," they, in the judgment of this court, clearly had the right to do the work themselves if they chose to do so. Moreover, under Ordinance 31755, specifically mentioned and referred to in Ordinance No. 32254, the railroad companies had been "required to proceed with the reconstruction of" the viaduct. Under the circumstances they were acting as the agents of the City and are entitled to the exemption from damage to abutting property owners referred to in the Tillotson case, cited supra.

What has been said is probably dispositive of the several questions presented. While the court has expressed the view that the "change of grade" statute is not applicable and therefore a three-fourths vote of the governing body was not required, it is constrained to state that it does not decide, nor does it intend to imply, that a three-fourths vote of a commission of three is required in the enactment by the City of any ordinance. To so hold would be supererogation. The City is operating under a special statute,[6] its three commissioners being the governing body, a majority of which constitutes a quorum to transact business. It is doubtful, to say the least, that the legislature intended to require that they act unanimously in changing the grade of a street or alley; but the question may be passed in this case.

Did the driveway or approach and does the portion of it yet remaining, constitute a purpresture as alleged by the City? Plaintiff admits that no resolution or ordinance was ever passed or action taken by the governing body of the City giving consent or permission to him or his predecessors in title to erect, construct or maintain any driveway connecting the building with the viaduct. That the approach was an encroachment and that the piers remaining constitute an obstruction in 18th Street cannot be gainsaid. City of Emporia v. Humphrey, 132 Kan. 682, 297 P. 712 and the cases therein cited characterize any permanent encroachment upon a public street for a private purpose as a purpresture and a nuisance per se. It also holds that injunction, or a mandatory order of court, is appropriate to cause its abatement and that laches or estoppel cannot be raised against such action. On the authority of that case it is held that the City is entitled to the relief it seeks. Cf. State ex rel v. Paul, 112 Kan. 826, 213 P. 165; City of Russell v. Russell County Building & Loan Association, 154 Kan. 154, 118 P.2d 121.

The motion of the several defendants, including the third party defendant, for summary judgment is hereby sustained

---

[5] Sec. 13-1019 General Statutes of Kansas, 1935.

[6] Sec. 13-1707a General Statutes of Kansas, 1935.

and the clerk of this court is ordered and directed to enter a judgment, as provided by law and by the rules of this court,[7] that there be no recovery by the plaintiff and that he pay the costs of this case. Jurisdiction to make any further orders relative to the purpresture or its removal is retained by the court.

---

[7] Rules 58 and 79, Federal Rules of Civil Procedure; Rule XXI, Rules of Practice, United States District Court for the District of Kansas.