ADAM BITZER v. GEORGE W. LEVERTON AND HENRY KILLION.

**No. 396.** (57 Pac. 1045.)

CITIES—*Removal of Obstructions in Streets.* A city of the second class has a right, through its mayor and street commissioner, summarily to remove unnatural dangerous obstructions from its streets and public highways, without any express authority therefor by an ordinance of such city.

Error from Brown district court; R. M. EMERY, judge. Opinion filed July 18, 1899. Affirmed.

*Ryan & Stuart,* and *Means & Smith,* for plaintiff in error.

*James A. Clark,* for defendants in error.

The opinion of the court was delivered by

McELROY, J. : This action was brought by Adam Bitzer in the district court of Brown county against George W. Leverton and Henry Killion to recover damages in the sum of $750, for the wrongful, unlawful, wilful and wanton destruction of property. The defendants answered: (1) General denial; (2) that they were mayor and marshal, respectively, of the

city of Horton; (3) denied any unlawful or wrongful destruction of property; and (4) averred that all acts done in the premises were performed by Leverton by virtue of his official position as mayor, for the sole purpose of removing obstructions in the public highways of the city of Horton. A trial was had before the court and a jury. The defendant Killion, when plaintiff rested, filed a demurrer to the evidence, which was sustained. The defendant Leverton then introduced his evidence. The trial resulted in a verdict for the defendant and judgment against plaintiff for costs. To all of which the plaintiff excepted, and presents the case to this court for review.

The city of Horton is a city of the second class, and High street is one of the public highways of such city. In 1893 George W. Leverton was mayor, Henry Killion marshal, and M. Nadeau street commissioner. Adam Bitzer, during the year 1892, was owner of lot 20, in block 16, in the city of Horton, situated at the intersection of High and Florence streets. In the month of October of that year Bitzer began the erection of a brick tenement house thereon, with a frontage of seventy-five feet on High street and extending back 35 feet on Florence street; the east wall of the building was two feet from the west line of High street. He was constructing a cornice or awning along the High street front the full length of the building, five and one-half feet in width, which extended about three and one-half feet into the street; the awning was ten or eleven feet high, and posts were placed along the outer edge to support the superstructure. The city, through its officers, objected to the maintenance of the same in the street, claiming that it was an obstruction. About June 10, 1893, prior to the completion of the building, Nadeau, the street

commissioner, acting under the authority of Leverton as mayor, sawed off at the street line and removed that portion of the awning, together with the floor or platform and posts which extended into the street. While this was being done Bitzer procured a shot-gun, with which he made some demonstrations, when Henry Killion, the marshal, put him under arrest. There is no evidence tending to show that Killion in any way advised, assisted, aided or abetted in the removal of the obstruction. His only connection, as shown by the evidence, was simply that he arrested Bitzer when he appeared in a threatening manner with a shot-gun. There is a total want of evidence to connect Killion with the removal of the structure, so as to make him in any manner liable for the acts done. It is argued that Killion made the arrest and this enabled the workmen to proceed in safety during the absence of Bitzer. The claim that the arrest of Bitzer in some remote manner contributed to the ease and comfort of the workmen in removing the awning, and that therefore the officer is liable as a joint tort-feasor, is not tenable. It might as well be insisted that the party who made the saw or hammer used by the workmen was a joint tort-feasor; without these instruments the work could not have been accomplished with comfort and ease. The court properly sustained the demurrer.

The only other question presented is, Has a city of the second class authority to remove obstructions from its public highways except in obedience to an ordinance? Or, in other words, has the street commissioner, in the absence of such ordinance, acting under the direction of the mayor, a right summarily to remove obstructions from a public street? The city of Horton had no ordinance defining the rights, privi-

Bitzer v. Leverton.

leges or duties of its citizens in constructing awnings
in or over the streets, nor prohibiting the construction
thereof.   The awning in question was in the street;
an obstruction placed there without color of authority.
The plaintiff in error claims no right or authority to
maintain the awning as constructed, but insists that
the awning was intended to be, when completed, self-
supporting; that he intended to remove the posts and
thereby remove the obstruction.   Upon the other
hand, it is contended that the awning was not self-
supporting; that posts were necessary to support the
structure; that it was a dangerous obstruction as
built, or, if completed as proposed by the removal of
the posts, that it would remain a menace to the trav-
eling public, an obstruction to the highway.   There
were no special findings.   In order to return a gen-
eral verdict for the defendant, it was necessary for the
jury to find all of these contentions against the plain-
tiff in error and in favor of the defendant. . The jury
evidently found that the awning was an obstruction,
unauthorized, and that it was a menace to the travel-
ing public.

The first law of self-preservation would imply the
right of a city to remove obstructions from its streets
for which it might be liable if they were permitted to
remain.   A city is liable to parties injured by reason
of unnatural obstructions in the streets, whether placed
there by the city or other parties.   It seems to be more
in keeping with reason that one should not place awn-
ings or obstructions in the streets or thoroughfares
without first procuring permission, than that such
obstructions, when placed in the streets, cannot be
removed without express authority of an ordinance.
It is not only the right, but the duty, of the officers of
a city of the second class to remove all unauthorized,

unnatural, dangerous obstructions from its traveled streets.   The neglect of the officers to perform such duty with reasonable diligence fixes a liability upon the city for all damages sustained in consequence thereof.

The court committed no error in giving or refusing instructions.   The issues were fairly presented to the jury in the instructions given.   The motion for a new trial was properly overruled.

The judgment is affirmed.