GEORGE B. CHAPMAN ET AL., APPELLANTS, v. CITY OF LINCOLN ET· AL., APPELLEES.

FILED MAY 21, 1909. No. 15,714.

1. Cities: STREETS AND SIDEWALKS: LEASING. The charter of the city of Lincoln, giving the mayor and council supervision and control of all public highways and. public ground within the city, does not authorize them to enact ordinances for the leasing of space on the streets or sidewalks in front of business houses for use by produce dealers or other merchants; such use of the streets and sidewalks being unlawful and constituting a nuisance *per se.*

2. ———: ———: OBSTRUCTIONS. Whatever space in a public street of a city is set apart for the use of the public as a sidewalk, the public have a right to use in its entirety, free from any and all

unauthorized obstructions, and it is the duty of the mayor and city council to see that it is kept in that condition.

3. ——: ——: ——: ACTION: DEFENSES. It is no defense to a party who is being proceeded against by a city for unlawfully obstructing a sidewalk that others are obstructing the walks in like manner.

4. ——: ——: ——: ESTOPPEL. Nor is the city estopped by reason of its past failure to enforce its ordinances against the obstruction of sidewalks from subsequently removing all obstructions therefrom.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Affirmed.*

*Rose & Comstock,* for appellants.

*John M. Stewart, D. J. Flaherty* and *T. F. A. Williams,* contra.

FAWCETT, J.

Plaintiffs seek to enjoin the defendant city from enforcing certain ordinances which prohibit the use of sidewalk space in the city for the sale of fruits, books or other merchandise, and the erection or maintenance upon such sidewalk of any booth, shed, stand or other obstruction. A temporary injunction was issued, which, upon final hearing, was dissolved and plaintiffs' suit dismissed. Plaintiffs appeal.

The stipulation of facts upon which the case was tried and decided in the court below fairly reflects the issues. It stipulates that the principal defendant, the city of Lincoln, is a city of the first class, having more than 40,000 and less than 100,000 inhabitants, and is governed by chapter 13, art. I, Comp. St. 1907; that the defendants Brown, Cooper, and Strode, are the mayor, chief of police and city attorney, respectively, of the city; that plaintiffs are all residents of defendant city, and now are, and for a long time past have been, engaged in lawful business and mercantile pursuits therein; that plaintiff Chapman

has a leasehold estate in a tract of ground about 40 feet square, located at the southwest corner of Tenth and O streets in said city, which he occupies in conducting the business of a retail drug merchant; that plaintiffs Louis and John Bernero are sublessees and tenants of said Chapman, engaged in a mercantile pursuit, embracing the handling of fruits, cigars, tobacco and like subjects of lawful merchandise, which they store in a private areaway controlled by said Chapman underneath the sidewalk space immediately adjacent to said Chapman's drug store on Tenth street, and also occupy a space in the street of five feet in width with a stand and an inclosed shed or booth for the display and sale of said articles of merchandise, such space extending out from the lot line and wall of the building of said Chapman; that the said Bernero & Bernero pay monthly for the renting of said private areaway and the said privilege of occupying said space in the street for the sale and display of their goods the sum of $50 to said Chapman; that the plaintiff Swearingen conducts a business on lot B of subdivision of lots 5 and 6, in block 41, in defendant city at the corner of Eleventh and P streets, and has a leasehold interest in said property, and has for a monthly rental as a consideration paid him permitted the plaintiff Arrigo to occupy a private areaway adjacent to said property, and under the sidewalk space adjoining said property, where said plaintiff Arrigo conducts a place of business for the sale of fruits, tobacco and other lawful merchandise, and occupies a place in the street next to the lot line and abutting property of five feet for the display and sale of his wares; that plaintiff Christophalus "was heretofore granted permission by the city under its general ordinance, and as a lessee of the Harley Drug Company, a merchant occupying a tenement located at the southeast corner of Eleventh and O streets, to whom he pays a consideration, occupying with an inclosed booth or room the five feet of the sidewalk space in the street next to said tenement and lot line of abutting owner for a place

to shine shoes"; that each of the other plaintiffs occupies certain portions of the sidewalk space of defendant city, viz., the inside five feet of such walks, being the five feet adjoining the lot line of the abutting property owners, for the display and sale of merchandise of a like character to that above set out; that the same is done in each instance with the consent of the occupants of the abutting property and upon the payment of a rental therefor; that plaintiffs have a common interest in the determination of the validity and interpretation of the general and special ordinances of the city, mentioned and referred to in the stipulation, and because of their common interest have joined as plaintiffs in this suit for the purpose of saving a multiplicity of controversies, and to maintain peace and quiet and avoid dissensions and a multiplicity of civil suits and criminal prosecutions; that on September 20, 1904, the defendant city passed an ordinance which was duly published and approved, and has never been expressly repealed, as follows:

"Section 24. Hereafter no person shall construct or place, or cause to be constructed or placed, any portico, porch, door, window, sign or outside stairway, which shall project into or over any sidewalk more than four feet from the lot line. No sidewalk shall be used for the storage or exhibition of goods, wares, or merchandise of any kind or description whatever, which shall occupy greater space than four feet next to the building or boundary line of the lot." That the persons in said several lines of business are by defendant city permitted under said ordinances to exhibit and store merchandise in the sidewalk spaces not exceeding four feet in width adjoining the tenements owned and occupied by them for the same business, and permitted others owning property abutting on the public streets to occupy the same for porticos, etc., for a space of four feet of the public street or sidewalk; that such uses of the space above severally defined is general and availed of by more than 80 merchants who occupy said four feet space for exhibition and

storage of merchandise, among them a large number of grocerymen and venders of fruits and tobaccos, whose business to some extent comes immediately and directly in competition with the business of the several plaintiffs; that on November 26, 1906, defendant city passed the following ordinance, being ordinance number 436, entitled "An ordinance to amend section 1 of an ordinance entitled 'An ordinance to amend and repeal paragraph 36, section 1148 of article 46 of the Revised Ordinances of 1895 relating to misdemeanors and miscellaneous practices, and for the granting of permits for the use of sidewalk space, passed and approved Feb. 5, 1900, and to repeal sections one and two of said ordinance,'" as follows:

"Be it ordained by the mayor and council of the city of Lincoln, Nebraska. Section 1. That said section one of the above named ordinance be and it is hereby amended to read as follows: It shall be unlawful for any person, persons or corporation to erect or maintain any booth, shed, stand or other obstruction upon the streets, sidewalks or sidewalk space of the city of Lincoln for the sale of fruit, books or other merchandise, or any article or thing of value, or to erect or maintain any shed or booth or stand thereon to be used for shining boots and shoes: Provided, that this section shall not apply to wagons maintained for the sale of popcorn; and provided, that the city clerk may grant a permit to the owner of such popcorn wagons to maintain the same at a place designated for a period not exceeding one year from the date thereof, when an application for the same is presented to him with the consent in writing of the owner and occupant of the property immediately abutting upon said location. Section 2. That sections one and two of the above entitled ordinance be and the same are hereby repealed. Section 3. This ordinance shall take effect and be in force from and after its passage, approval and publication according to law. But this ordinance shall not affect the term of any license or permit heretofore granted

and now in force, during the length of time therein named."

That plaintiffs had long prior to the passage of said ordinance been granted permits for a specified period of time by the city under an ordinance theretofore regularly passed, providing for the granting of such permits to use and occupy the portions of the sidewalk space in the streets occupied by them as stated, but said time for which said permits had been granted had expired before the 28th day of November, 1906, and each of the plaintiffs had continued his business without let or hindrance from the defendants or any one of them until the passage of the aforesaid ordinance on the 26th day of November, 1906, and until the time for which permits which had been granted had expired; that defendants threaten to and will, unless enjoined by this court, close the place of business of each of the plaintiffs and prohibit the further continuance thereof, and will prosecute divers and sundry complaints against the plaintiffs and each one of them to enforce fines and penalties, and will tear down and remove the property of each one of plaintiffs under the command and by the authority of said last mentioned ordinance; that the sidewalks at all places where plaintiffs occupy any part thereof are 25 feet in width.

In addition to the stipulation, plaintiffs introduced in evidence paragraph 1290 on page 354 of the "Revised Ordinances of Lincoln, 1895," which ordinance, so far as the same is applicable to the controversy here, is the same as the ordinance of September 20, 1904, set out in the stipulation of facts, except that the latter ordinance, which is admitted to be an amendment of the former, changes the distance from the lot line for which the sidewalk space may be used for any of the purposes set out from three and five feet, respectively, to four feet. Under the above stipulation it will be seen that each of the plaintiffs is occupying five feet of the sidewalk space for the purposes mentioned, which is in direct violation of the ordinance of September 20, 1904, which only permits the

use of four feet of space for such purposes. As the city makes no point upon that fact, we pass it by.

Plaintiffs' petition contains a number of other allegations to the effect that the ordinance of November 26 is aimed specially at the plaintiffs, for the purpose of driving them out of business; and that defendant city has no intention of having said ordinance applied to the other business men of the city who are occupying sidewalk space for display of their goods; and assailing the manner in which the ordinance was passed. As the bill of exceptions contains no proof of any of these matters, we will treat them as having been abandoned, and consider the case upon the facts as set out in the stipulation above referred to.

Section 96, ch. 13, art. I, Comp. St. 1907, provides: "The mayor and council shall have supervision and control of all public ways and public grounds, within the city and shall require the same to be kept open, in repair and free from nuisances." Subdivision 6, sec. 129, provides that it is the duty of the city: "To remove all obstructions from the sidewalk, curbstones, gutters and crosswalks at the expense of the owners or occupiers of the grounds fronting thereon, or at the expense of the person placing the same there, and to regulate the building of bulkheads, cellars and basement ways, stairways, railways, window and doorways, awnings, hitching posts and rails, lamp posts, awning posts, and all other structures upon or over adjoining excavations through or under the sidewalks of the city."

Reading these two sections from the statute in reverse order, it will be seen that the city has power to remove all obstructions from the sidewalks, and that it is required so to do. The city cannot enlarge the power thus granted, nor evade the duty imposed. Hence it is not within the power of the city to grant any privileges for the use and obstruction of its streets and sidewalks in contravention of the power granted it by statute. In *Bischof v. Merchants Nat. Bank,* 75 Neb. 838, we adopted

the language of Elliott, Roads and Bridges (2d ed.), sec. 645: "Public highways belong, from side to side and end to end, to the public, and any permanent structure or purpresture which materially encroaches upon a public street and impedes travel is a nuisance *per se.*" That the booths and business set out in the stipulation are within the class above designated is self-evident. The fact that the sidewalks of the city are 25 feet in width is immaterial. Whatever space is set apart for the use of the public as a sidewalk the public have a right to use in its entirety free from any and all obstructions, and it is the duty of the mayor and city council to see that it is kept in that condition. The fact that the city may have been derelict in its duty in that behalf in the past affords no just reason why such dereliction should continue. Nor is it any defense to any person or set of persons, when proceeded against by the city for obstructing the sidewalks, that there are others obstructing the walks in like manner, against whom the city has not proceeded. The presumption must necessarily be that the city will proceed against all violators of its ordinances and compel all persons who are obstructing its streets and sidewalks to remove such obstructions. The fact that defendant city in the past has been permitting these violations of its ordinances and the statutes of the state, but has now commenced the work of removing all obstructions, may well be construed as evidence of the fact that it intends to prosecute the good work to a final and proper conclusion. Nor is the city estopped by reason of its failure to enforce the ordinances in the past, or by reason of its permission of such violation, from now insisting upon a strict observance of its ordinances. *Rothschild & Co. v. City of Chicago,* 227 Ill. 205; *Denver v. Girard,* 21 Colo. 447; *City of Chicago v. Pooley,* 112 Ill. App. 343; *Pew v. City of Litchfield,* 115 Ill. App. 13; *Schopp v. City of St. Louis,* 117 Mo. 131. In the latter case it is said: "The St. Louis city charter, * * * giving the city power 'to regulate the use of streets,' does

not authorize it to enact ordinances for the leasing of spaces on a street in front of business houses for produce dealers, such use of the streets being unlawful and a nuisance to the abutting property owners and the public." The fact that the "abutting property owners" for a monthly cash consideration give their consent to the erection and continuance of such nuisances cannot bind the public. The public has a right to the free use of the streets and sidewalks, of which the city itself has no power to deprive it.

Moreover, the contention of plaintiffs that the city is permitting a large number of other merchants to make a like use of the sidewalks is not sustained by the stipulation of facts. From that stipulation we learn that the other merchants referred to are using a portion of the sidewalk space only for the display of their goods; that is to say, they are displaying upon the sidewalks samples of the goods they are selling in their respective stores, while plaintiffs are converting the sidewalks into a market place for crying out and selling their goods and merchandise. Because the city has, perhaps illegally, seen fit to allow its merchants to display upon the walk in front of their stores samples of the goods for sale within, it does not follow that it was ever the intention of the city that such merchants could convert the sidewalk space, set apart for the use of the public, into a source of monthly revenue by subletting it to other merchants of whatever class for the transaction of another and different kind of business from that which was being carried on in the abutting store.

We do not think the ordinance of November 26, 1906, which is so vigorously assailed by plaintiffs, will bear the construction which they place upon it. As we read the ordinance, it applies to all persons or corporations, and prohibits them from erecting or maintaining any booth, shed, stand, or other obstruction upon the streets, sidewalks, or sidewalk space, not only for the sale of fruit and books, but for the sale of "any other merchandise,

or article or thing of value." Clearly this prohibits any and all persons from in any manner using the sidewalks of the city for the sale of merchandise of any kind. In other words, it prevents all persons from using the sidewalk space for business purposes, to the obstruction of the free use of every portion thereof by the public.

In addition to what has been said, it appears from the stipulation that the passage of the ordinance of November 26 was designed by the city to put a stop to the unlawful use which had theretofore been made of its sidewalks; that prior thereto plaintiffs had been granted permits for specified periods of time by the city council under an ordinance theretofore passed by the city council providing for the granting of permits to use and occupy the portions of the sidewalk space; but that "such time for which said permits had been granted had expired before the 28th day of November, 1906." If, therefore, it could be conceded that the city had power to grant such permits prior to November 28, 1906, it is established by the record that it refused to grant any thereafter. This was clearly within its power. It being conceded that plaintiffs' right to use the sidewalk space was merely a permissory right, the moment the permission was withdrawn the right ceased; for it needs neither argument nor citation of authority to show that one who has the power to grant permission to do a certain thing, and grants it for a definite time, may, at the end of that time, refuse to extend the permission.

It would seem useless to pursue this subject further. Viewed from any standpoint, the judgment of the district court is right and it is

AFFIRMED.