No. 20,946.

EDITH E. FAIRCHILD et al., *Appellants,* v. THE CITY OF HOLTON
et al., *Appellees.*

SYLLABUS BY THE COURT.

1. PAVING STREETS—*Authority of City Commissioners—Statute.* Under
a statute (Gen. Stat. 1915, § 1764) which authorizes the mayor and
commissioners of a city of the second class to pave a street when
they deem it necessary to do so, subject to the right of the resident
owners of more than one-half of the property subject to taxation for
such paving to protest and thus prevent the projected improvement,
it is immaterial whether the mayor and commissioners determined the
necessity for the paving upon their own initiative or were prompted
to consider the matter on a petition of resident property owners.

2. PAVING STREETS—*Protest of Resident Owners Not Directly Affected.*
Seven blocks of a street had been paved; it was proposed to pave three
blocks of the same street; and there was one intervening block be-
tween the completed and the proposed paving. A protest by the resi-
dents of the intervening block against the proposed paving of the
three blocks was without legal effect and could not prevent the pro-
posed paving, since such protestants were not affected by the proposed
paving.

3. SAME — *Intervening Block — Discretion of Commissioners.* It takes
nothing from the force of the proposition announced in paragraph 2
of the syllabus, that when the proposed three blocks of paving are

Fairchild v. City of Holton.

completed the intervening block can be paved to connect the two paved portions of the street under another statute (Laws 1911, ch. 123) at the discretion of the city, and without the sanction or acquiescence of the property owners of that block.

4. INJUNCTION—*City Officers—Discretionary Powers.* No court can enjoin a city and its officers from the *bona fide* exercise of official powers clearly conferred upon them by statute, and a court can only interfere where official powers are clearly abused—a fact nonexistent in the instant case.

5. PAVING STREET—*Ordinance Submitted by "Initiative"—Ordinance Defeated at Election—Ordinance Dead.* Where a city and its officials are lawfully undertaking to pave a portion of a street, and the project is interrupted by insufficient protests and later by a proposed ordinance initiated by electors under section 1861 of the General Statutes of 1915, and the proposed ordinance is submitted to the people at an election and defeated, the proposed ordinance is no longer of any effect, and it does not prevent the city and its officials from proceeding with the project to pave the street as originally undertaken.

6. SAME — *Ordinance — Material of Pavement.* An ordinary city ordinance for the paving of a portion of a street "with vertical fibre brick on concrete base with asphalt filler," is not a mere amendment to an ordinance proposed and defeated by the people, and which had provided for the paving "with a one-course concrete pavement not less than six inches thick."

Appeal from Jackson district court; OSCAR RAINES, judge. Opinion filed July 7, 1917. Affirmed.

*James H. Lowell,* and *Thomas A. Fairchild,* both of Holton, for the appellants.

*E. R. Sloan,* city attorney, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: In this action the plaintiffs sought to enjoin the city of Holton and its officers from paving three blocks of Fifth street, the principal thoroughfare extending east and west in that city. Theretofore seven blocks of the street had been paved, and the proposed improvement was an extension of that paving except for a hiatus of one block; that is to say, there were seven blocks of completed paving, one block to remain unpaved for the time being, and the proposed paving of three blocks involved in this suit.

Pursuant to section 1764 of the General Statutes of 1915 the mayor and commissioners adopted a resolution to pave the

three blocks in question. A protest was presented, signed by the resident owners of something less than half the property affected. A protest was also made by the resident owners of the intervening block between the proposed paving and the completed paving. The first protest was disregarded as insufficient, and the second protest was ignored altogether. Before the city officials took further action an ordinance was prepared and presented (under the privilege of initiative conferred upon electors in cities governed by commission, Gen. Stat. 1915, § 1861) praying that the city commission enact it or submit it to a vote of the people. It provided for paving the three blocks in question "with a one-course concrete pavement not less than six inches thick." The commission declined to enact it and submitted it to the electors and it was defeated. Thereupon the city officials took up the work of paving the three blocks at the point where it was interrupted by the protests and by the initiative and election, and enacted an ordinance for the paving of the three blocks with "vertical fibre brick on five-inch concrete base with asphalt filler."

It was to enjoin proceedings under this ordinance and to enjoin the levy of taxes to pay for this paving that this action was instituted.

The district court made many findings of fact, refused to make certain findings requested by plaintiffs, and gave judgment for defendants.

Plaintiffs complain of the trial court's finding that a number of resident property owners affected by the paving had petitioned the city commission to pave. The mayor and one of the commissioners testified that such was the fact. The fact itself is not a vital one in this case, since the statute did not require a petition, but made it discretionary with the commission and subject only to a protest of resident owners of more than half the property affected (Gen. Stat. 1915, § 1764); but if this were a vital fact in the case, the trial court's finding is bound to stand under the familiar rule that the supreme court never disturbs a trial court's findings when there is some competent evidence to support them.

Plaintiffs next complain of the trial court's refusal to find that a majority of the resident property owners of the inter-

vening block between the completed paving and the proposed paving were opposed to the improvement, and that the city officials knew of their opposition, and that the city officials had it in mind, as soon as the three blocks in question were paved, to pave the intervening block under the power conferred on the city by chapter 123 of the Laws of 1911, without the consent of the residents of that block, thus securing the pavement of the entire length of the street. Even if the trial court had gratified the plaintiffs by making such finding, it would not have affected the result, nor would it have warranted a judgment for plaintiffs. The number of the opposing residents of the intervening block could not be added to the opposing number of residents on the three blocks affected in order to make a majority against the paving. The statute contemplates nothing of the sort.

When the city officials are proceeding according to law, their official work may not be interfered with by injunction. It is never unlawful to plan, to do, or to set about the doing of anything which the law permits. Seven blocks of the street were paved. Three blocks of the same street were about to be paved in conformity with the statutes. When this should be accomplished, the one intervening block could be paved without hindrance from obstructionists and regardless of their objections. That is precisely the purpose, or one of the purposes of chapter 123 of the Laws of 1911. Section 1 in part reads:

"And in all cases when two or more portions of any street or alley have been graded, guttered, curbed, paved, or macadamized and intervening portions of said street or alley have not been graded, guttered, curbed, paved, or macadamized the mayor and council or board of commissioners, may by resolution cause the intervening portion to be graded, guttered, curbed, paved or macadamized not to exceed two blocks, and levy special assessments to pay for the same." (Gen Stat. 1915, § 897.)

It is contended that the paving was unnecessary, and that the action of the city officials was arbitrary. The court found otherwise, and made a finding that the best interests of the city would be served by paving the three blocks in controversy. That was further than the court needed to go, for that matter was vested in the city and not in the court, and so long as the court failed to find that the city had abused its power, there could be no judicial interference, even if the court itself had thought the paving unnecessary.

Another contention of plaintiffs is that since the people had defeated an ordinance (prepared under the privilege of the initiative) proposing to pave the three blocks, the city had no power to proceed; that the action of the electors settled the proposition. The statute relied on, in part, reads:

"And any ordinance proposed by petition, [the initiative] or which shall be adopted by a vote of the people, can not be repealed or amended except by a vote of the people." (Gen. Stat. 1915, § 1861.)

Plaintiffs urge that notwithstanding the defeat of this proposed ordinance it is still of sufficient potency to prevent its amendment by a common city ordinance, and that the ordinance providing for the paving of the three blocks "with vertical fibre brick on five inch base with asphalt filler" is a mere amendment to the ordinance initiated and defeated by the electors in which it was proposed to pave the three blocks "with a one-course concrete pavement not less than six inches thick." We think not. The electors might be perfectly willing to have a first-class pavement, and that contemplated by the city officials might be highly satisfactory, while a one-course pavement might be a worthless waste of money. But the statute can not mean what plaintiffs contend. Read as plaintiffs would read it, the proposed ordinance which was rendered abortive by an adverse vote of the electors would need to be amended by a vote of the people and could be amended in that manner, and then it would become once more a valid *proposed* ordinance subject again to a vote of the people. Carrying this a little further, but only to show the absurdity of this contention, if the amendment to the proposed ordinance were lost, it too would need another proposed amendment to the proposed and defeated amendment, to the proposed and defeated ordinance before the project of paving this portion of the street could again be undertaken. Maybe these deductions are not necessary to show the fallacy of plaintiffs' contentions, but they do show it. The statute merely means that an ordinance proposed by the people, and which is adopted either by the city commission or by the electors, or one proposed by the city commission and submitted to and adopted by the people can only be amended or repealed by the people. An ordinance defeated by the people is dead. It has no longer any effect or conse-

quence upon the future action of the people or their city officials.

Little more need be said on this subject. Many cases are cited, and many more could be cited to the effect that what can not be done directly can not be done indirectly. But the paving of the three blocks was undertaken directly and pursuant to statutory authority. (Gen. Stat. 1915, § 1764.) Nothing indirect or evasive of the law in letter or spirit was attempted. The paving of the intervening block between these three blocks and the seven blocks already paved will not need to be done indirectly, at least that can not be assumed since the act of 1911 (ch. 123) gives express and direct authority therefor.

The judgment was correct, and this renders it unnecessary to notice the interesting question presented in defendant's motion to dismiss.

Affirmed.