CITY OF PIERCE, APPELLEE, v. ALBERT SCHRAMM, APPELLANT.

FILED DECEMBER 9, 1927. No. 25861.

*H. B. Muffly* and *E. D. Beech,* for appellant.

*M. H. Leamy, contra.*

Heard before GOSS, C. J., ROSE, DAY, GOOD, THOMPSON and EBERLY, JJ.

THOMPSON, J.

The City of Pierce, situate in the county of Pierce, instituted this action to have the defendant Schramm enjoined from maintaining and operating certain gasoline pumps by him constructed and operated between the graded portion of the street and his lot line, to have such construction declared a nuisance and ordered removed. After the issues were duly joined and evidence submitted, judgment was entered in favor of the plaintiff as prayed. Defendant appeals.

The action is before us for trial *de novo.* This being a suit in equity, equitable principles must control our consideration of the evidence, as well as our application of the law to the facts proved.

Pierce is a city of the second class. The laws governing such cities authorize them to enact ordinances for certain purposes, among which are to regulate and prevent the use of streets, sidewalks, and public grounds, and to remove all obstructions therefrom. Comp. St. 1922, secs. 4182, 4203, 4278, 4304, and 4306. Thus, it will be seen that as to these purposes the city proceeds by and through its ordinances duly enacted. So far as this record shows, no such ordinance was ever passed. The only ordinance introduced in evidence was one which provides: "The curb line in, along

and through all streets and avenues in this city shall be so located as to secure a twenty-four (24) foot thoroughfare for traffic over and upon said streets and avenues, unless a wider thoroughfare be ordered on certain streets by resolution of the mayor and council." The record further discloses that in platting this city it was bounded on the east side by the Meridian highway, which highway was at the time 66 feet in width and had been used prior thereto for public travel for many years, it being situated on the section line, as testified by some, and on the half-section line, as testified by others; that, so far as affects this case, such highway is designated in the pleadings as a street, which had been adopted by the county and the state as a public highway, to wit, United States government No. 81; that the defendant at the times involved herein owned a lot abutting this street or highway for approximately 123 feet (without sidewalk construction), and had erected thereon a building, the outer line of which was the outer line of this Meridian highway; that at the time, at this place and for some distance therefrom, this street was in a condition unsafe for traffic, and the traveled portion thereof was much narrower than at the commencement of this suit; that defendant, desiring to establish and operate what is commonly known as a filling station on his own lot, and to install in connection therewith two modern gasoline pumps connected with underground tanks in the space between his lot line and a then imaginary curb line, and about 8½ feet from such lot line, consulted with the different members of the street committee of the then city council, and informed them of his desire, and at the same time told them that, if they, for the city, would consent, he would widen and grade the street and place the same in condition more suitable for public travel at his own expense, and for these purposes asked them to meet him at such place and view the situation, which they did, and each approved of his proposal, and he, in furtherance thereof, commenced the construction of the pumps, and the grading of the street, and consumed two months time in such work, and expend-

ed in the repairing of the street the necessary and reasonable sum of $500; that each member of the council passed by and observed the above improvements as they were being made, and placed, and knew of the purpose thereof; that the street was greatly improved and rendered more convenient and suitable for travel; that there were three other dealers, competitors of defendant, who maintained and operated gasoline pumps and stations similarly constructed and situated, the defendant's being 8½ feet from the lot line, and the street by him leveled and open to travel to such point, and the others from 14 to 15 feet from such lot line, and thus from 6 to 7 feet farther out in the street than the pumps of defendant; that at each and all of such filling stations the automobiles, while being filled with gasoline or otherwise served, stood in the highway proper and outside of the curb line; that after the pumps were constructed defendant continued to operate the same until just prior to the bringing of this action, when a notice was served upon him to vacate; upon receipt of which notice he offered to remove his pumps, provided that the other dealers similarly situated were required to do the same, and continues such offer. It is further admitted, and made a part of the evidence in this case, "that no notice to remove was ever given to the owners of any other gasoline pumps located within the streets of the city of Pierce between the lot line and the curb line of said streets."

The appellee and, as indicated by its holding, the trial court relied upon the law as announced and applied by us in *Chapman v. City of Lincoln*, 84 Neb. 534. It must be remembered, however, in that case the whole controversy was centered upon the question as to whether or not an ordinance duly enacted could be enforced. In the instant case, a very different situation is presented, as the city is proceeding without an ordinance. Furthermore, the plaintiffs in the *Chapman* case were those who were similarly situated and similarly affected by the ordinance, and they were seeking to enjoin its enforcement. Here, those similarly situated are not even made parties to the suit, and

the defendant is arbitrarily selected out of the group of those similarly situated, and that without any intention on the part of the city of in any manner molesting the others; but, rather, it presents a futile attempt at proof of an excuse for such arbitrary discrimination.

In a case like this, the general holding of the courts is that the owner of an abutting lot has certain proprietary rights in the street, which, however, are subordinate to the public use thereof, when exercised in harmony with statutory direction. Thus, while the consent to the erection and use of the pumps in question was given by the individual members of the city street committee, and the construction thereof observed by each member of the city council, this would in no manner estop the city from enacting an ordinance, general in its character, requiring the removal of such encroachment and all others of a similar nature. However, neither in the passage of such an ordinance, in the attempted enforcement thereof by injunction, or in a proceeding as here under consideration, should one of a number of persons similarly situated be arbitrarily selected as the one to be proceeded against.

As we view the facts and the law applicable, this case is controlled by our conclusion in *Kenney v. Village of Dorchester*, 101 Neb. 425, wherein we held: "The right of a private party to occupy part of a public street in front of his place of business must yield to public necessity or convenience, and ordinarily the question of public necessity or convenience is for the governing body of the municipality, but such body cannot act arbitrarily and deny to one citizen privileges which it grants to another under like conditions."

The judgment of the trial court is reversed, and the suit dismissed.

REVERSED AND DISMISSED.

Note—See 25 L. R. A. (n. s.) 400; 18 A. L. R. 101; 29 A. L. R. 450; 34 A. L. R. 507; 42 A. L. R. 978; 49 A. L. R. 767; 13 R. C. L. 215; 3 R. C. L. Supp. 29; 5 R. C. L. Supp. 688; 25 L. R. A. (n. s.) 400.