No. 29,317.

THE CITY OF EMPORIA, *Appellant*, v. HATTIE HUMPHREY, *Appellee*.

(297 Pac. 712.)

Opinion filed April 11, 1931.

*Roscoe W. Graves* and *O. L. Isaacs*, both of Emporia, for the appellant.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Virgil V. Scholes* and *Margaret McGurnaghan*, all of Topeka, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for a mandatory injunction to compel the defendant to move that portion of her building which plaintiff alleges is situated in one of the principal streets of the city. The trial court made findings of fact and rendered judgment for defendant. Plaintiff has appealed.

Commercial street in Emporia is the principal north-and-south business street of the city. The avenues which intersect it are numbered. Its north terminus is at Twelfth avenue, north of which are the grounds and buildings of the Kansas State Teachers College. The vehicular and pedestrian traffic on this street is heavy, and becoming more so. The principal business district of the city is perhaps at Sixth and Commercial, or south of it. North of that, where there were residence properties, these, in recent years, have been giving way to business properties. Defendant is the owner of two lots which lie directly north of Eleventh avenue and west of Commercial street. Commercial street is 100 feet in width. It is paved through the center 40 feet wide, on each side of which are parkings and sidewalks in the street. Plaintiff alleged that the title to the streets is in the county and that their possession and control are vested by law in the city, the governing body of which is authorized by law to prohibit and prevent encroachments and obstructions upon or into the streets, and to cause their removal; that in the years 1922 and 1923 defendant and her husband, since deceased, constructed a two-story building on the east portion of the lots above mentioned and unlawfully, and contrary to the ordinances of the city, placed the building, including its foundation and upwards, partially in and upon Commercial street and Eleventh avenue; that plaintiff is informed and believes, and therefore alleges, that the building extends in and encroaches upon Commercial street for a distance of three feet, and also encroaches upon Eleventh avenue a distance of twelve inches; that the governing body of the city, in regular meeting and by proper action, has deemed and declared it to be necessary and expedient that the entire width of Commercial street be made available and devoted to public use, and that plaintiff, before the beginning of this action, notified defendant of that fact and requested and demanded that she remove that portion of the building that encroaches into and extends over and upon Commercial street, and the defendant has neglected,

failed and refused to do so. The prayer was that the defendant be ousted and ejected from the use and occupation of that portion of Commercial street on which her building is situated, and that defendant be required to remove the encroachment and obstructions and enjoined from thereafter maintaining them. In this court the question of the encroachment of the building upon Eleventh avenue is not urged, and we shall treat the case in so far as it pertains to the alleged encroachment upon Commercial street only. Defendant's answer denied, in substance, that her building is in the street, and alleged that at the time of the beginning of the construction of the building her husband notified plaintiff of his desire to erect the building, and that the city sent a surveyor to establish the street line at Commercial street on the west and in front of defendant's property; that the survey was made and the building constructed on the line shown by such survey; that no other line has been established by any other survey, and that the line so established was recognized by plaintiff and the public generally as being the correct line, and many buildings were erected along the street using the same line; that the expense of moving the building, or taking off the front portion of it, would not be less than $5,000, and that plaintiff is estopped from requiring defendant to move the building, or any part thereof; that even if the building does encroach upon the street its removal would not increase the use of the street by the public, nor permit any additional use to be made of it, and would not in any way benefit the public interest; that should the court, upon full hearing, find that the building encroaches upon the street, and that the same interferes with the public use of the street, she is entitled to a survey to know where the line is and to have the encroachment removed at the expense of plaintiff, or to have the court assess and determine her damages. The prayer was for a full and complete hearing and for a finding that the building does not encroach upon the street, and does not interfere with the use of the street by the public, and if the court should find that the building projects into the street, that the court further find that it does not interfere with the use of the street by the public; that if the court deem it necessary, a survey be ordered, under the direction of the court, and if it were found that the building is in the street and the public interests required that the same be removed, that plaintiff be required to pay the expenses of such removal, or that defendant's

damages be determined and adjudged against plaintiff. The aver-ments of the answer were denied in a reply.

At the close of the evidence the court was requested to make findings of fact, and did so. Among other things, the plaintiff requested the court to find whether defendant's building was in the street, and if so, to what extent. The court made no finding on that subject, but on a motion to modify findings made, and for additional findings, the court made the following finding on that point:

"That the east end or front of the building complained of is located at and along the west side of sidewalk on west side of said Commercial street, and the southeast corner of which said building extends thirty-six inches east and over a line *contended by the plaintiff* to be the west line of Commercial street and such east end or east side of such building is located upon a line extending thence in a northerly direction approximately fifty feet to a point at the northeast corner of such building and such point being thirty-four and one-half inches east and over a line *contended by the plaintiff* to be the west line of Commercial street, Emporia, Kan. [Italics ours.]"

Obviously this finding does not meet the issue squarely. One of the principal points to be determined in the action was whether the building was in the street, and if so, to what extent. Under the evidence there would have been no trouble for the court to have made a definite finding on that question. Three surveys had been made, one by the city engineer, one by the deputy county engineer, and one by the two of them acting together, all of which were in accord so far as the lot line and the street line in question were concerned. The deputy county surveyor had been employed by defendant to make the survey which he made by himself, but was not called by her as a witness, but was called by the plaintiff. No substantial effort was made by defendant to show that these surveys were inaccurate. It is true that the city engineer and surveyor started with certain points shown by a Parkman survey made in 1902, and since used and recognized as a basis for survey work. Some of the stakes used by the Parkman survey had been covered by pavement, or otherwise, but were noted by permanent landmarks. The evidence was that this was used simply as a means of convenience, and that the surveyors, while making the surveys testified about in this case, did in fact find original stakes, the lines from which coincided with those of the Parkman survey and with the surveys then being made. While these surveys were not made under the statute (R. S. 19-1423) providing for a survey to establish

corners and boundaries, with notice to property owners, etc., no substantial reason is suggested for questioning their accuracy. For the court to find where the "line contended by the plaintiff" was located was not a determination of the' issue presented on that point and added nothing to what everyone knew throughout the trial. Appellant complains because the court did not make a specific finding on that question. The point is well taken and requires a reversal of this case. Had the evidence justified it, and had the court found that the building did not extend into the street, it would have ended plaintiff's right to recover and there would have been no purpose in the court making the more than sixty findings which were made. The court should have found specifically whether the building was in the street, and if so, how much of it was in the street, as was done in *Kansas City v. Burke*, 92 Kan. 531, 141 Pac. 562. (See, also, *City of Madison v. Mayers and others*, 97 Wis. 399, 73 N. W. 43.)

Broadly speaking, the court's numerous findings relate to two main questions: *First*, if the building is so constructed that about three feet across the entire front of it extends into, and to that extent is situated in and upon, the street, does the portion of the building which is in the street constitute a public nuisance, and does it seriously interfere with the use of the street by the public for vehicular and pedestrian traffic? *Second*, if the building is in the street to the extent just referred to, is the city estopped from requiring defendant to remove it?

As to the first of these questions the court found if the building is in the street to the extent contended by plaintiff it does not constitute a public nuisance nor interfere with the use of the street by the public. Appellant contends that this was not a question for the court, but is a question to be determined by the governing body of the city, and the proper city officials having determined the question, the court should not substitute its judgment for that of such officials. The point is well taken. By statute in this state the title to the city streets is in the county (R. S. 12-406), but their control, use and improvement are vested in the city. (*A. & N. Rld. Co. v. Garside*, 10 Kan. 552; *Wood v. National Water Works Co.*, 33 Kan. 590, 7 Pac. 233; *Gadarl v. City of Humboldt*, 87 Kan. 41, 123 Pac. 764.)

The governing body of the city may prohibit and prevent all encroachments into and upon the streets of the city. (R. S. 14-424.) The problem of the use of the city streets is a practical one to be

solved by the governing body of the city and not by the courts. (*Slocum v. City of Wichita,* 114 Kan. 260, 217 Pac. 297.) The action of the governing body with respect to the use of the streets and what obstructions, if any, may be permitted therein, is legislative in character, and the courts will not interfere with its determination. (*City of Emporia v. Railway Co.,* 88 Kan. 611, 129 Pac. 161; *Seward v. Rheiner,* 2 Kan. App. 95; *State, ex rel., v. City of Neodesha,* 3 Kan. App. 319; *Stewart v. City of Neodesha,* 3 Kan. App. 330; *Fairchild v. City of Holton,* 101 Kan. 330, 166 Pac. 503; *Root v. City of Topeka,* 104 Kan. 668, 180 Pac. 229; *National Sign Co. v. Douglas County Comm'rs,* 126 Kan. 81, 266 Pac. 927), unless its action is such that it can be said to be arbitrary, capricious and not made in good faith. (*City of Emporia v. Railway Co.,* 94 Kan. 718, 147 Pac. 1095.)

The governing body of the city has no authority, by statute or otherwise, to permit permanent structures to encroach upon or be placed within the city street. (*Smith v. City of Leavenworth,* 15 Kan. 81.) Its duty is to preserve the streets for public use. A permanent encroachment upon a public street for a private purpose is a purpresture, and is in law a nuisance. In 2 Elliott on Roads and Streets, 4th ed., section 828, it is said:

" 'Public highways belong, from side to side and end to end, to the public,' and any permanent structure or purpresture which materially encroaches upon a public street and impedes travel is a nuisance *per se,* and may be abated, notwithstanding space is left for the passage of the public. This is the only safe rule, for, if one person can permanently use a highway for his own private purposes, so may all, and if it were left to the jury to determine in every case how far such an obstruction might encroach upon the way without being a nuisance, there would be no certainty in the law, and what was at first a matter of small consequence would soon become a burden not only to adjoining owners, but to all the taxpayers and the traveling public as well. Thus expediency forbids any other rule. But even if it did not, the rule is well founded in principle, for it is well settled that 'the public are entitled not only to a free passage along the highway, but to a free passage along any portion of it not in the actual use of some other traveler,' and if this be true it necessarily follows that there can be no rightful permanent use of the way for private purposes."

In 13 R. C. L. 186 it is said:

"Any unauthorized obstruction or encroachment upon a street or highway *per se* constitutes a public nuisance, even though it does not actually operate as an obstruction to travel or work a positive inconvenience to anyone."

To the same effect see 3 and 4 McQuillin on Municipal Corpora-

tions, 2d ed., §§ 982, 983, 1437, 1454; 3 Dillon on Municipal Corporations, 5th ed., §§ 1130, 1131, 1176; 29 C. J. 616; 44 C. J. 946.

In *State v. Kean*, 69 N. H. 122, 45 Atl. 256, it was said:

"The public, however, is entitled to the full and free use of all the territory embraced within the limits of a highway, not only for actual passage, but for all purposes that are legitimately incident thereto. Every actual encroachment upon a highway by the erection of a building or fence thereon, or any other permanent or habitual occupation thereof, is an invasion of the public right, even though it does not operate as an actual obstruction to public travel. (Wood, Nuis. §§ 81, 250.) 'Where there is a house erected, or an inclosure made upon any part of the king's demesnes, or of an highway, or common street, or public water, or such like public things, it is properly called a "purpresture."' (4 Bl. Comm. *167.) '"Pourpresture" cometh of the French word "pourprise," which signifieth a close, or inclosure—that is, where one encroacheth, or maketh several to himself that which ought to be common to many.' (Co. Litt. 277b; Co. Magna Charta, 38, 272.)· Any unauthorized erection over a highway is a purpresture. (Wood, Nuis. § 77; *Knox v. Mayor, etc.,* 55 Barb. 404; *Attorney-general v. Evart Booming Co.,* 34 Mich. 462.) Since the public right is coextensive with the limits of the highway, the fact that the traveled part is not thereby impeded is no defense to an indictment charging the erection or maintenance of a building or other construction within the highway. (Rosc. Cr. Ev. 619; *Commonwealth v. Wilkinson,* 16 Pick. 175; *Com. v. King,* 13 Metc. [Mass.] 115; *Com. v. Blaisdell,* 107 Mass. 234; *Harrower v. Ritson,* 37 Barb. 301, 303; *Dickey v. Telegraph Co.,* 46 Me. 483; *Wright v. Saunders,* 65 Barb. 214; *Reg. v. Telegraph Co.,* 8 Jur., n. s., 1153; *The King v. Wright,* 3 Barn. & Adol. 681; *Reimer's Appeal,* 100 Pa. St. 182.) This does not conflict with the adjoining owner's right to make any reasonable temporary use of the street which does not unnecessarily obstruct the public passage." (p. 125.)

*Chapman v. City of Lincoln,* 84 Neb. 534, 121 N. W. 596; *McDowell v. Village of Preston,* 104 Minn. 263, 116 N. W. 470; *Kelty v. City of Minneapolis,* 157 Minn. 430, 196 N. W. 487; *City of Marshall v. Cook,* 169 Minn. 248, 211 N. W. 328; *Davis v. Spragg,* 72 W. Va. 672, 79 S. E. 652; *Martinsburg v. Miles,* 95 W. Va. 391, 121 S. E. 285; *Hibbard & Co. v. City of Chicago,* 173 Ill. 91, 50 N. E. 256; *City of Valparaiso v. Bozarth,* 153 Ind. 536, 55 N. E. 439; *State v. Kean,* 69 N. H. 122, 45 Atl. 256; *Ackerman v. True,* 175 N. Y. 353, 67 N. E. 629; *City of New York v. Rice,* 198 N. Y. 124, 91 N. E. 283; *Opdycke v. Public Service Ry. Co.,* 78 N. J. L. 576, 76 Atl. 1032; *Dozier v. City of Austin,* (Tex. App.) 253 S. W. 554; *J. M. Radford Grocery Co. v. City of Abilene,* (Tex. App.) 20 S. W. (2d) 255; *Starwich v. Ernst,* 100 Wash. 198, 170 Pac. 584; *First National Bank v. Tyson,* 133 Ala. 459, 32 So. 144; *Emerson v. Babcock, City Marshal,* 66 Ia. 257; 23 N. W. 656; *Lacy v. City of Oskaloosa,*

143 Ia. 704, 121 N. W. 542; *City of Eau Claire v. Matzke*, 86 Wis. 291, 56 N. W. 874; *Wauwatosa v. Dreutzer*, 116 Wis. 117, 92 N. W. 551.

This list of authorities is not intended to be exhaustive. Many more of the same import might be cited. The principles announced in these authorities are of ancient origin and of almost universal application that streets, for their full length and width, are for public use; that any permanent structure erected therein, or encroaching thereon, is a nuisance *per se*, irrespective of whether for the time being it actually interferes with public travel; that the control of the streets in most places, as it is in this state, is in the governing body of the city, and that when the governing body of the city determines that any obstruction in or encroachment upon a street should be removed it is acting in its legislative capacity, and its action will not be reviewed by the court unless it can be said to be arbitrary, capricious, or not in good faith; and generally, that it is the duty of the city to keep the streets free from obstructions and encroachments.

We are not dealing here with a situation such as was before the supreme court of errors of Connecticut in the recent cases of *Yale University v. New Haven*, 104 Conn. 610, 134 Atl. 268, and *Hendryx Co. v. New Haven*, 104 Conn. 632, 134 Atl. 77, where it was held that an act of the legislature authorized the city to grant to an owner of property on both sides of the street permission to construct an overhead structure across the street if the same would not interfere with the use of the street by the public, or with light, air and view by adjacent owners, and in other respects be safe and reasonable. Some of the late New York cases are to a similar effect, but it is not necessary to analyze these cases carefully, for no one contends in the case at bar that the legislature had authorized the city to erect in the street the structure complained of in this case. Neither are we dealing here with the principles governing what may be called the shade-tree cases (see *Emerson v. Babcock, City Marshal*, supra) such as *Remington v. Walthall*, 82 Kan. 234, 108 Pac. 112, and allied cases, for our statute (R. S. 14-424) specifically authorizes the governing body of a city to regulate the planting and protection of shade trees, the building of bulkheads, cellar and basement ways, etc., in streets. There is no contention that the encroachment in question comes within the purview of that statute, or that there had been any action of the city with respect thereto. Or-

dinarily a city in this state has no power to give permission to an individual to use the street for a purely private purpose. (*Mikesell v. Durkee & Stout,* 34 Kan. 509, 9 Pac. 278.)

When the city finds an unauthorized obstruction or encroachment in a street two methods of procedure, depending on circumstances, may be employed for its abatement. The first is summary removal (44 C. J. 1012), such as was employed in the procedure which gave rise to the case of *Bitzer v. Leverton,* 9 Kan. App. 76. Bitzer owned lots with seventy-five feet frontage on High street and constructed a brick tenement house thereon for the full frontage of his lot, the east wall of which was two feet west of the west line of the street. He constructed a cornice or awning along High street the full length of the building five and one-half feet in width, which extended about three and one-half feet into the street. The awning was about ten feet high, and posts were placed along the outer edge to support it. He had no permission from the city to construct this awning, and its officers objected to the maintenance of the same in the street. Acting under the authority of the mayor, the street commissioner sawed off at the street line and removed that portion of the awning, together with the floor or platform and posts, which extended into the street. Bitzer sued the mayor and street commissioner for damages, and failing to recover in the court below, appealed. The court held the city officials were within their rights in removing the structure from the street. Or the city officials may, at their election, resort to the courts to abate a public nuisance. (44 C. J. 1015.) The action may be to enjoin the construction of the obstruction or encroachment if it is in contemplation only, or in the nature of a mandatory injunction if its construction is in whole or in part completed. (See authorities above cited; also, *Milwaukee v. Gimbel Bros.,* 130 Wis. 31, 110 N. W. 7; *Kelty v. City of Minneapolis,* supra; *Callahan v. City,* 170 Ia. 719, 153 N. W. 188; *Webb v. Comm'rs of Butler Co.,* 52 Kan. 375, 378, 34 Pac. 973; *Council Grove Township v. Bowman,* 76 Kan. 563, 567, 92 Pac. 550; *Kansas City v. Burke,* 92 Kan. 531, 141 Pac. 562; id., 93 Kan. 236, 144 Pac. 193; *State, ex rel., v. Moulds,* 108 Kan. 465, 196 Pac. 233.) In an action to abate the obstruction or encroachment by injunction, or mandatory injunction, the court should not undertake to review the legislative action of the city in determining the necessity or prudence of its efforts to remove the obstruction or encroachment. (See authorities heretofore cited, also 32 C. J. 242, 260. Our own cases, and particularly *Fairchild v. City of Holton,* supra, and *Root v.*

*City of Topeka,* supra, are directly in point.) The authority of the court in such an action prosecuted or defended by public authorities differs from a somewhat similar action between private individuals in that in the latter cases the court has a wide discretion, depending upon the facts of the particular case, either to grant the injunction, or to allow damages, or require the parties to pursue their remedies at law. (*Lewis v. Pingree Nat. Bank,* 47 Utah 35, 151 Pac. 388; *Van Marter v. First Nat. Bank of Princeton,* 87 N. J. Eq. 500, 100 Atl. 892; *Starkie v. Richmond,* 155 Mass. 188, 29 N. E. 770; *Cave v. Henley,* 125 Kan. 214, 264 Pac. 25, and cases there cited.) But the public has no adequate remedy at law for the appropriation by an individual for private use of a public street, and cannot be compensated in damages.

Appellee cites *Eble v. The State,* 77 Kan. 179, 93 Pac. 803, in support of the contention that the court has discretion with respect to ordering the removal of permanent structures encroaching on a highway or street. That was an action by the state for a mandatory injunction to abate obstructions and encroachments on a highway. These consisted of a cattle shed and a corncrib near the center of the road and three fences across the road and a barn, or the shed attached to it, which encroached a few feet in the highway. At the trial counsel for the state announced in open court:

"I want to state now to the court that the state of Kansas is not going to ask to have the barn moved nor torn down, nor injured one bit." (p. 23, appellee's brief.)

So, while the pleadings of the case were framed to involve the abatement of that portion of the barn which encroached upon the highway, the action, so far as that item was concerned, was abandoned by the state and the case was presented to the court as though no claim for the abatement of the barn was made. The trial court found that defendant maintained fences, cattle sheds and other obstructions in and across the highway, and adjudged that he abate them within sixty days by removing everything except the barn from the highway. In view of the position taken by the state at the trial the judgment of the court, excepting the barn from the order, was not an adjudication that the barn was rightfully there, or that the court, in its discretion, declined to order its removal. In the opinion it was said:

"The state at large has an interest in keeping the highways in every county free from obstruction to public travel, no matter what the attitude of the local authorities upon the question may be. The willful obstruction of a

highway is a public offense which the state may prosecute, even though the township trustee be disinclined or refuse to do so. Such an obstruction may be enjoined and abated as a common nuisance by the state, even though the board of county commissioners should be opposed to the suit; and the legislature has made it the duty of the county attorney to prosecute, on behalf of the people, all suits, civil or criminal, arising under the laws of the state, in which the state is a party or is interested. . . .

"The court likewise rightfully declined to hear evidence of the value of the barricading improvements. The wrong to the public could not be palliated because of the amount of money expended by the wrongdoer in its perpetration. Perhaps the evidence might have appealed to the court's discretion, but the court took into consideration the character and location of the offending property in exercising his discretion over the allowance of the equitable remedy sought, as the judgment clearly shows, and this was sufficient." (pp. 181, 183.)

Appellee cites this last sentence as indicating the court's discretion with respect to leaving the barn in the highway, but it is clear from reading the opinion and the briefs that such was not the purpose of the language.

In this case, in addition to its statutory duties to keep the streets free from obstruction and encroachments, the city had an ordinance making it unlawful for any person or persons to erect, or cause to be erected, upon any street, any building or buildings, or any other structure or obstruction whatsoever. Prior to the bringing of this action the governing body of the city, in regular meeting, by unanimous action, instructed the city attorney to take whatever action may be necessary to have the Eckdall & McCarty and Humphrey buildings moved back to the property line. Eckdall and McCarty moved their building back to the property line. The defendant in this case was notified that her building encroaches upon and extends over on to Commercial street, and she was requested to remove that portion of it which encroaches and extends over and upon that street without unnecessary delay. This notice and request appear to have been ignored, hence this action.

As to the findings of the trial court upon which is predicated the theory that plaintiff is estopped from seeking to remove the encroachment in the street, not much need be said. Even if it be true, as the trial court found on conflicting evidence, that an employee in the office of the city engineer ran the lot lines at the time the building was constructed, that fact does not bind the city. (McCarty v. Bauer, 3 Kan. 237.) It is no part of the city's duty to locate the boundary lines of lots owned by individuals. No statute gives it power or authority to do so. Since the streets are

for the use of the public, no city employee could, by any act or negligence on his part, deprive the public of its right to the full use of the streets. As was said in *Eble v. The State,* supra:

"This court is already committed to the doctrine that a private individual cannot obtain title to a public highway by adverse possession; that lapse of time will not bar the remedy of the state against encroachments upon a highway; that an obstruction to the public use of a highway is a continuing nuisance; and that no equities in favor of a person committing such a nuisance can be founded upon the acquiescence of the highway or other officials, or upon their laches in taking steps to punish or abate it. (*McAlpine v. Railway Co.,* 68 Kan. 207, 75 Pac. 73, 64 L. R. A. 85; *Webb v. Comm'rs of Butler Co.,* 52 Kan. 375, 34 Pac. 973, and cases cited in those opinions.)" (p. 184.)

In deciding a motion for rehearing in *State, ex rel., v. Paul and Grice,* 113 Kan. 412, 214 Pac. 425, a similar question had been urged. The court said:

"This court has never given its sanction to any such doctrine. It is altogether out of accord with the theory of Kansas jurisprudence. Beginning with *Wood v. M. K. & T. Railway Co.,* 11 Kan. 323, 349, there is a long and undeviating line of decisions down to and including *In re Moseley's Estate,* 100 Kan. 495, 164 Pac. 1073, and *The State, ex rel., v. Piper,* 103 Kan. 794, 798, 176 Pac. 626, which hold that laches and estoppel do not operate against the state, that no procrastination of public officials prejudices the state, and that their tardiness neither bars nor defeats the state from vindicating its sovereign rights, except where positive statutes so provide. That the state's rights in a public highway differ in no material respect from any other of its manifold sovereign interests and concerns is also settled law. (See *Eble v. The State,* 77 Kan. 179, 184, 93 Pac. 803.)"

This accords with the general rule, although appellee cites cases from some other states tending to hold to the contrary. It is not necessary to review these cases.

From what has been said it necessarily follows that the judgment of the court below must be reversed and a new trial granted. At such new trial the court shall first determine whether or not defendant's building encroaches upon Commercial street and, if so, the extent of such encroachment. If the finding is that the building does not encroach upon the street, judgment should be for defendant, but if the finding is that the building does encroach upon the street, the judgment should be that the encroachment be abated within a reasonable time.

It is so ordered.

SMITH, J., dissenting.

SLOAN, J., not participating.